FORET, Judge.
William Tanner (defendant) was charged by indictment with negligent homicide. On December 17, 1981, defendant filed a motion to suppress the results of a breath analysis test performed on him. The trial court granted the motion, finding that the Department of Public Safety’s regulations governing the use and maintenance of the auto-intoximeter machine were insufficient to insure its accuracy. On December 2, 1982, we granted the State’s application for writs, concluding that the trial court abused its discretion in granting the motion to suppress. On January 21, 1983, 427 So.2d 444, the Louisiana Supreme Court granted defendant’s application for writs and set aside our judgment, ordering the case resubmitted on briefs with oral arguments to be followed by a written opinion.
ISSUES[1]
(1) Whether a motion to suppress is the proper procedural vehicle for raising an objection to the admissibility of an auto-intoximeter test result;
(2) Whether the results of the auto-intox-imeter test performed on defendant were the product of an unconstitutional search and seizure.
FACTS
On November 8, 1980, defendant was involved in an automobile accident which resulted in the death of a passenger traveling in another vehicle. Defendant was driving at a high rate of speed when his vehicle struck the rear of a boat and trailer being towed by the automobile in which the victim was traveling. The impact of the collision resulted in the death of the victim. The state policeman investigating the accident noticed alcohol on defendant’s breath, and he iwas transported to Troop D Headquarters where he was administered an auto-intoximeter breath analysis test. The test showed defendant’s blood-alcohol ratio to be .189%, well over the level presumptive of being under the influence. See LSA-R.S. 32:662.
MOTION TO SUPPRESS
Defendant, in his “AMENDED MOTION TO SUPPRESS EVIDENCE”, alleged that the results of the auto-intoximeter test should be suppressed because the State failed to promulgate constitutionally sufficient criteria to insure the accuracy of the auto-intoximeter. He further alleged that the State failed to prove compliance with the regulations, as presently written, of the Department of Public Safety governing the use and maintenance of the machine.
The State contends that it is improper for defendant to use a motion to suppress to raise these objections because this procedural vehicle is limited to contesting the constitutionality of a search and seizure. It argues that defendant’s objections are addressed to the admissibility of the test results and are properly raised at the trial on the merits.
Before discussing this issue, we note defendant’s assertion that the State is precluded from raising this issue on appeal as it allegedly failed to object to arguments concerning it at the hearing on the motion to suppress. See LSA-C.Cr.P. Article 841. An examination of the record indicates that the State raised its objection in its brief filed in the trial court. Further, a reading of the trial court’s reasons for judgment clearly shows that the State’s objection had been brought to its attention. Thus, we find no merit to defendant’s argument.
LSA-C.Cr.P. Article 703(A) provides:
“Art. 703. Motion to suppress evidence
*1189 A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.” (Emphasis ours.)
State v. Bienvenu, 260 La. 1023, 258 So.2d 72 (La.1972), stated in Footnote 1 that:
“La.C.Cr.P. Art. 703 permits suppression only of evidence obtained “by an unconstitutional search or seizure”. It was not intended to permit suppression of evidence seized by a warrant “illegal” merely because technically contrary to law, unless the seizure is violative of fundamental due process concepts. See Official Revision Comment (b).”
State v. Garnier, 261 La. 802, 261 So.2d 221 (La.1972), stated on page 223 that:
“A motion may be used to suppress evidence taken by means of an “unconstitutional search and seizure”, La.C.Cr.P. Art. 703, subd. A, but our procedure does not authorize the use of the motion to suppress to test the admissibility of evidence constitutionally seized.”
See also State v. Murray, 357 So.2d 1121 (La.1978); State v. Dudek, 263 La. 258, 268 So.2d 217 (La.1972).
The only issue properly before the trial court at the hearing on the motion to suppress was whether the results of the auto-intoximeter test should be excluded as having been unconstitutionally obtained. Defendant’s arguments concerning the reliability of the auto-intoximeter, and the State’s alleged failure to comply with the rules of the Department of Public Safety, go to the weight to be given the evidence and its admissibility, which are determinations to be made at the trial on the merits.[2]
CONSTITUTIONAL ISSUES
Turning now to the issue of whether evidence was unconstitutionally obtained from defendant, we note that a defendant’s motion to suppress must set forth the specific evidence sought to be suppressed, and the specific reasons why that evidence should be suppressed. See State v. Richey, 258 La. 1094, 249 So.2d 143 (La.1971).
A reading of defendant’s “MOTION TO SUPPRESS EVIDENCE” shows that he specifically set forth the results of the auto-intoximeter test, as the evidence to be suppressed, and gave the following reasons for suppressing this evidence:
“a) Such evidence was the result of a violation of the constitutional rights of the defendant;
b) That the defendant did not knowingly and intelligently waive his constitutional rights and the consequences of a refusal to take the test;
c) That even if the court should find that as a fact his signature appears on the waiver form, that such action was not an intelligent waiver at the time due to the physical and mental incapacity of the defendant.”
It appears to us that defendant has failed to give specific reasons why the evidence should be suppressed. He alleges that he did not knowingly and intelligently waive his constitutional rights, but fails to state what these constitutional rights are. We are inclined to reverse the trial court’s judgment on this basis alone. However, we will show that the evidence was constitutionally obtained.
Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), is the leading case involving a determination of the rights of a person arrested while driving under the influence of alcohol vis-a- *1190 vis the ability of a state to subject such a person to certain tests to determine the percent by weight of alcohol present in his blood.
Petitioner in Schmerber was convicted of driving while under the influence of alcohol. He was arrested at a hospital while receiving treatment for injuries suffered in an accident involving the automobile he had been driving. At the direction of a police officer, a blood sample was withdrawn from petitioner’s body by a physician. The chemical analysis of the sample revealed the presence of alcohol in his blood at the time of the offense, which indicated intoxication, and the report of the analysis was admitted in evidence at his trial. Petitioner objected to introduction of this evidence on the ground that the blood had been withdrawn despite his refusal, on advice of counsel, to consent to the test. He contended that in this circumstance the withdrawal of the blood and the admission of the analysis in evidence denied him due process of law under the Fourteenth Amendment to the U.S. Constitution, as well as specific guarantees of the Bill of Rights secured against the States by that amendment. Specifically, petitioner alleged that the above mentioned actions violated: his privilege against self-incrimination under the Fifth Amendment; his right to counsel under the Sixth Amendment; and his right not to be subjected to unreasonable searches and seizures as provided by the Fourth Amendment.
Schmerber noted that the extraction was made by a physician in a simple, medically acceptable manner in a hospital environment. Then, citing Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), and Rochin v. People of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the court held that, under such circumstances, the withdrawal of blood did not offend one’s “sense of justice”. It rejected petitioner’s due process argument. See 384 U.S., at 759, 760, 86 S.Ct., at 1829, 1830.
In the action sub judice, there was minimal intrusion into defendant’s body. He was simply required to breathe into a machine to test for the presence of alcohol in his blood. Certainly, this procedure violated none of defendant’s due process guarantees.
Schmerber went on to dispose of petitioner’s claim that the withdrawal of the blood and admission in evidence of the analysis violated his privilege against self-incrimination. Schmerber held that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis did not involve compulsion to these ends. See 384 U.S., at 761, 86 S.Ct., at 1830.
In the action sub judice, it is apparent that the breath test evidence obtained from defendant is neither his testimony nor evidence relating to some communicative act or writing by defendant. Thus, it is not inadmissible on the grounds that obtaining said evidence violated defendant’s privilege against self-incrimination. See State v. Hargrave, 411 So.2d 1058 (La.1982); State v. Dugas, 252 La. 345, 211 So.2d 285 (La. 1968), certiorari denied, 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691 (1969).
Finally, Schmerber addressed petitioner’s claim that the chemical analysis should be excluded from evidence as the product of an unconstitutional search and seizure. On 384 U.S., at 767, 86 S.Ct., at 1833, Schmer-ber found that testing procedures (breath analysis, blood tests, etc.) plainly constitute searches of “persons”, and depend anteced-ently upon seizures of “persons”, within the meaning of the Fourth Amendment.
Schmerber was concerned with the fact that petitioner had been arrested without a warrant, but noted that:
“Here, there was plainly probable cause for the officer to arrest petitioner and charge him with driving an automobile while under the influence of intoxicating liquor.”[3] See 384 U.S. at 768, 86 S.Ct. at 1834.
*1191 Having found that petitioner had been lawfully arrested, Sehmerber went on to discuss the fact that the search of petitioner, and the seizure of evidence from him, had proceeded without the issuance of a search warrant. Sehmerber ultimately concluded that this warrantless search fell within one of the specifically established exceptions to the warrant requirement, i.e., a search incident to a lawful arrest.[4] See 384 U.S., at 771, 86 S.Ct., at 1836. However, Sehmerber noted that the traditional basis for this exception (the protection of police officers from the danger of concealed weapons and the prevention of the destruction of evidence under the direct control of the person arrested), “... have little applicability with respect to searches involving intrusions beyond the body’s surface.” See 384 U.S., at 769, 86 S.Ct., at 1835.
Because of these concerns, Sehmer-ber set forth two additional requirements that must be met before these searches can be considered constitutional under the Fourth Amendment. The first is that the test chosen to measure a suspect’s blood-alcohol level must be a reasonable one. The second is that the test must be performed in a reasonable manner. See 384 U.S., at 771, 86 S.Ct., at 1836.
In the action sub judice, Louisiana State Police Officer Russell Haman testified that he was on duty and investigated the accident in which defendant was involved. It was while he was administering first aid to defendant at the accident scene that Officer Haman noticed the smell of alcohol on his breath. Officer Haman testified that:
“His actions were slow. He didn’t display any feeling. I . .. apparently he didn’t know that he had injured someone as bad as he had. He just stood by his truck, and afterwards, after the District Attorney and other officers got there, I concentrated my efforts and went over and spoke to him. I determined that I ... in my feeling, he was intoxicated, and I placed him under arrest and read him his Miranda warning ... in my opinion, he was DWI.”
After advising defendant that he was under arrest for DWI, Officer Haman searched him, handcuffed him, and placed him in the front seat of his vehicle.
Sergeant Herman J. Rogers of the Louisiana State Police also testified at the hearing on the motion to suppress. He performed the auto-intoximeter test on defendant. Sergeant Rogers observed the defendant as he was brought into the police station, and he was also able to smell alcohol on defendant’s breath.
George V. Perez, Jr., an Assistant District Attorney, testified that he had been called out to investigate the accident. He arrived at the scene approximately one hour after it had occurred. He became concerned about the amount of time that had elapsed since the accident, and told the police officers that: “... if there’s someone you want to test, let’s get him at Troop D and test him.” According to Mr. Perez, the regulations governing the testing of DWI suspects required such tests to be conducted within two hours after the occurrence of an accident. He observed defendant standing alongside his vehicle, and stated that he saw defendant swaying from side to side. He followed Officer Haman back to Troop D Headquarters and was present when defendant was administered the auto-intoxim-eter test. He testified that Officer Haman read the standard rights form to defendant before Sergeant Rogers performed the test. *1192 After being informed of the test results, Mr. Perez advised defendant to make no statement and to contact an attorney. He testified that he told defendant that his alcohol reading was above the presumptive level, and that he would be charged with negligent homicide as someone had been killed in the accident.
The State makes no contention that defendant had been arrested pursuant to an arrest warrant. LSA-C-Cr.P. Article 213 provides:
“Art. 213. Arrest by officer without warrant; when lawful
A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence; and if the arrest is for a misdemeanor,1 it must be made immediately or on close pursuit;
(2) The person to be arrested has committed a felony, although not in the presence of the officer;
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer; or
(4) The peace officer has received positive and reliable information that another peace officer from this state holds an arrest warrant, or a peace officer of another state or the United States holds an arrest warrant for a felony offense.
A peace officer in close pursuit of a person to be arrested, who is making an arrest pursuant to this Article may enter another jurisdiction in this state and make the arrest. Amended by Acts 1972, No. 646, § 1; Acts 1981, No. 613, § 1.”
A warrantless arrest must be based on probable cause. State v. Elliot, 407 So.2d 659 (La.1981); State v. Morvant, 384 So.2d 765 (La.1980); State v. Simms, 381 So.2d 472 (La.1980). Probable cause exists when the facts and circumstances within the arresting officer’s knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Elliot, supra; State v. Morvant, supra; State v. Simms, supra; State v. Tomasetti, 381 So.2d 420 (La.1980). While the State’s burden relative to the propriety of an arrest is far less than that concerning trial and conviction, mere suspicion on the part of the arresting officers is not enough. State v. Edwards, 406 So.2d 1331 (La.1981), certiorari denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982); State v. Ranker, 343 So.2d 189 (La.1977); State v. Randolph, 337 So.2d 498 (La.1976). Finally, the State has the burden of proving the admissibility of any evidence seized without a warrant. LSA-C.Cr.P. Article 703(D); State v. Keller, 403 So.2d 693 (La.1981); State v. Bazile, 386 So.2d 349 (La.1980); State v. Franklin, 353 So.2d 1315 (La.1978).
It is our opinion that the State has met its burden of proving that Officer Haman had probable cause to arrest defendant at the scene of the accident. He personally observed the effects of alcohol intoxication upon defendant’s physical and mental reflexes, and was able to smell alcohol on defendant’s breath. It is also our opinion that the breath analysis test performed on defendant was reasonable, and that it was conducted in a reasonable manner. Thus, the search of defendant was constitutional as it was made incident to his lawful arrest and conformed to the requirements set forth in Schmerber for such searches. Having found that the evidence was constitutionally obtained from defendant, we conclude that the trial court erred in granting the motion to suppress.
DECREE
For the above and foregoing reasons, the judgment of the trial court granting defendant’s motion to suppress is hereby reversed. The case is remanded to the trial court for further proceedings in accordance with law.
REVERSED AND REMANDED.

. The following issues were also raised:
(a) Whether constitutionally sufficient methods, procedures and techniques for insuring the reliability and accuracy of the auto-intoximeter machine were in effect at the time it was used to test defendant; and
(b) Whether the Dept, of Public Safety’s regulations governing the use and maintenance of the auto-intoximeter machine required the State to introduce affirmative proof of the “known alcohol value” used in checking and calibrating the machine. Because of the reasons set forth in this opinion, we find it improper to decide these issues on a motion to suppress.

. Defendant’s counsel appears to have been cognizant of the fact that it was improper to raise these issues at a hearing on a motion to suppress, and he expressed his doubts to the trial court. However, because of some notion of judicial efficiency or economy, both decided that these issues could be resolved at this time. We have already rejected the use of the notion of judicial economy or efficiency as a means of circumventing the positive provisions of the Louisiana Code of Civil Procedure. See Kaplan v. Missouri-Pacific Railroad Company, 409 So.2d 298 (La.App. 3 Cir.1981), writ denied, 411 So.2d 464 (La. 1982). We also reject the use of this notion for the same purpose with respect to the positive provisions of the Louisiana Code of Criminal Procedure.

. Schmerber noted that the officer smelled liquor on petitioner’s breath shortly after the *1191 accident, and that he had testified that petitioner’s eyes were, “... bloodshot, watery, sort of a glassy appearance”.

. It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable — subject only to a few specifically established exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire. 403 U.S. 443. 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Barrett, 408 So.2d 903 (La. 1981); State v. Aguillard, 357 So.2d 535 (La. 1978); State v. Lain, 347 So.2d 167 (La. 1977). One of these exceptions is a search incident to a lawful arrest made of a person and the area of his immediate control. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Wichers, 392 So.2d 419 (La.1981); State v. Barrett, supra.