448 So.2d 1346 (1984)
STATE of Louisiana
v.
Steven CORKRAN.
No. K83-779.
Court of Appeal of Louisiana, Third Circuit.
March 21, 1984.
Rehearing Denied April 9, 1984.
Writ Denied June 1, 1984.
*1347 Thomas M. Yeager, Alexandria, for defendant-appellant.
William E. Tilley, Dist. Atty. and Mark Kramer, Asst. Dist. Atty., Leesville, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
DOMENGEAUX, Judge.
Following defendant's conviction for driving while intoxicated and flight from an officer, he applied to this court for writs of certiorari or review of the OWI conviction. Recognizing this case as one which carries the right of appeal, we granted the writ for review. For the reasons set out below, we affirm the conviction for driving while intoxicated.

FACTS
On January 30, 1983, around 10:45 P.M., the defendant, Steven Corkran, was joined at a pool hall by his brother-in-law, Donald Scarber. From there they went to an establishment called Ellen's Bar where they *1348 remained until around midnight. With the defendant driving, they proceeded on Louisiana Highway 171 towards their homes at a high rate of speed.
While still on Highway 171 the defendant passed Louisiana State Trooper Stanley Cox at a speed estimated in excess of 90 miles per hour. Trooper Cox radioed ahead to Trooper William Withers who was on the same road and the two troopers began a high-speed chase of the defendant which continued for nine to twelve miles. During the chase the defendant was observed committing numerous traffic violations. At one curve, defendant's car left the road, went into a field and then re-entered the road.
The troopers finally stopped the defendant by performing what is described as a "rolling road block" in which Trooper Withers was able to pass the defendant and come to a stop, thus forcing the defendant to also stop. During this passing maneuver, Trooper Withers' and the defendant's cars collided causing the trooper to sustain a back injury.
At this point, the stories given by the troopers and the defendant and his passenger substantially differ. The defendant and his passenger claim to have been the victims of completely unprovoked beatings and the troopers testified that the two resisted arrest. A determination as to these facts is not necessary to this appeal. In any event, the defendant was stunned or knocked unconscious and taken to the emergency room for treatment. A blood sample was taken by a registered nurse in the emergency room and was analyzed at the State Police Crime Lab with results indicating the defendant had a blood alcohol level of .15, well above that needed to invoke a rebuttable presumption of intoxication.
Defendant was charged with committing five traffic violations denounced in the Louisiana Revised Statutes, Title 32. A motion to quash these charges was granted by the trial court because the prosecution had been improperly instituted. Defendant was also charged with violations of La.R.S. 14:98, 108, and 108.1; driving while intoxicated, resisting an officer, and flight from an officer, respectively. These three charges were consolidated for trial and, after waiving his right to a jury, defendant was found guilty of driving while intoxicated and flight from an officer. He was acquitted on the charge of resisting arrest.
For the charge of driving while intoxicated, defendant was fined $400 and costs, given a suspended sentence in parish prison of 90 days, and placed on two years supervised probation with several special conditions. For flight from an officer, the sentence was a fine of $400 and costs, a six months suspended sentence in parish prison, and two years supervised probation with the same conditions ordered as in the first sentence, except that defendant was additionally ordered to serve 15 days in parish prison. The sentences were ordered to run concurrently.
Prosecution was reinstituted on three of the Title 32 traffic violations and defendant entered a plea of nolo contendere to these charges. He received varying fines on each of the charges and varying jail sentences in case of a default in payment. The details of these charges and sentences are not necessary to this appeal.
Defendant appeals only his conviction for driving while intoxicated, claiming the trial court erred in:
1. Finding that the officer who directed that the blood test be administered had reasonable grounds to believe that the defendant was driving while under the influence of alcoholic beverages as required by La.R.S. 32:661;
2. Admitting into evidence the results of the blood test when it was not shown that the State strictly complied with the officially promulgated methods, procedures and techniques of the chemical analysis; and,
3. Finding beyond a reasonable doubt that defendant was under the influence of alcohol to the extent that he was mentally and physically impaired.
*1349 ASSIGNMENT OF ERROR NO. 1
By this assignment the defendant asserts that the trial court erred in denying a motion to suppress the results of a blood alcohol test since neither the arresting officer nor the officer who directed the test had reasonable grounds to believe that the defendant was operating a motor vehicle on a public highway while under the influence of an alcoholic beverage.
One of the charges for which the defendant was convicted, and which is relevant to this assignment of error, is defined by La. R.S. 14:98, as follows:
"A. The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(1) The operator is under the influence of alcoholic beverages; or
(2) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or
(3) The operator is under the influence of narcotic drugs, central nervous system stimulants, hallucinogenic drugs, or barbiturates."
The applicable statutes regarding tests for persons suspected of violating La.R.S. 14:98 include La.R.S. 32:661 which states, inter alia,
"A. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of R.S. 32:662, to a chemical test or tests of his blood, breath, urine or other bodily substance for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages. The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered." [Emphasis added].
In the instant case, it is evident that the arresting officers had reasonable grounds to believe that the defendant was under the influence of alcoholic beverages. Lt. Cox testified that the defendant passed his parked vehicle at an estimated speed of greater than 90 m.p.h. After he overtook the defendant's vehicle, he observed the defendant run through a stop sign and pass two vehicles in no-passing zones. He also observed the defendant's vehicle swerve into Trooper Withers' vehicle as the latter attempted to get in front of the defendant. Once the defendant's vehicle was stopped, Cox saw a beer can on the front seat. Trooper Withers testified that a strong odor of alcohol was present in the defendant's vehicle at the time of the stop; that he observed the defendant passing on a double yellow line and on curves, and running a red light in a reckless manner; and that once the stop had been made that the defendant was aggressive and combative.
The instant case may be analogized to the case of City of Baton Rouge v. Mitchell, 325 So.2d 588 (La.1976). In that case, the arresting officer observed the defendant's vehicle enter an intersection after the traffic signal had changed from amber to red, and came to an abrupt stop approximately one-fourth to one-half way into the intersection. The officer then pulled the defendant over and observed that his speech was slurred and that there was an odor of alcohol on the defendant's breath. The Court held that this was sufficient to constitute "reasonable grounds to believe the person to have been driving ... while under the influence of alcoholic beverages" under La.R.S. 14:98 and La.R.S. 32:661(A). It is submitted that, in the instant case, the grounds set forth by the arresting officers for administering the blood alcohol test were at least as compelling as those in Mitchell; thus, the trial court was correct *1350 in denying the defendant's motion to suppress insofar as it was based upon this objection.
ASSIGNMENT OF ERROR NO. 2
The defendant asserts that the trial court erred in overruling a motion to suppress the results of a blood alcohol intoxication test since the state did not lay a proper foundation by entering into evidence the officially promulgated rules of the Department of Public Safety and by the State's failure to show strict compliance with the officially promulgated methods, procedures, and techniques in the chemical analysis of the defendant's blood.
The Supreme Court has held in State v. Gregory, 403 So.2d 1225 (La.1981), that:
"In order for the state to avail itself of the statutory presumption of a defendant's intoxication arising from a chemical analysis of his blood, La.R.S. 32:662, it must show (1) that the state has officially promulgated detailed methods, procedures and techniques to insure the integrity and reliability of the chemical tests including provisions for repair, maintenance, inspection, cleaning, chemical accuracy, and certification; and (2) that the state has strictly complied with the officially promulgated methods, procedures and techniques in the chemical analysis offered as evidence in the case on trial." (Citations omitted).
Defendant claims that in order to comply with the first requirement listed above, the State must introduce into evidence a copy of the methods for chemical analysis approved by the Department of Public Safety pursuant to La.R.S. 32:663. We disagree. La.R.S. 32:663 states:
"Chemical analyses of the person's blood, urine, breath or other bodily substance, to be considered valid under the provisions of this Part, shall have been performed according to methods approved by the Department of Public Safety and by an individual possessing a valid permit issued by said department for this purpose. The Department of Public Safety is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the department."
The regulations promulgated by the Department of Public Safety (D.P.S.) pursuant to this authority are set forth in the Louisiana Register, Vol. 6, No. 11, p. 660 et seq., November 20, 1980.
La.R.S. 49:966 states:
"A. Nothing in this Chapter shall be held to diminish the constitutional rights of any person or to limit or repeal additional requirements imposed by statute or otherwise recognized by law. Notwithstanding the foregoing, and except as provided in R.S. 49:967, any and all statutory requirements regarding the adoption or promulgation of rules other than those contained in Sections 953, 954, 954.1 and 968 of this Title are hereby superseded by the provisions of this Chapter and are repealed. Except as otherwise required by law, all requirements or privileges relating to evidence or procedure shall apply equally to agencies and persons. Every agency is granted all authority necessary to comply with the requirements of this Chapter through the issuance of rules or otherwise.
B. If any provision of this Chapter or the application thereof is held invalid, the remainder of this Chapter or other applications of such provision shall not be affected. No subsequent legislation shall be held to supersede or modify the provisions of this Chapter except to the extent that such legislation shall do so expressly.
C. The courts of this state shall take judicial cognizance of rules promulgated in the State Register under the provisions of this Chapter."
In State v. Whinery, (# K83-376), (3rd Cir.La.1983), (Aug. 3, 1983), this Court denied writ of review, holding that the Louisiana Administrative Procedure Act (La.R.S. 49:951 et seq.) authorizes the courts of this *1351 State to take judicial notice of the D.P.S. regulations regarding intoxication tests.
For this reason defendant's contention that the test results should have been suppressed is without merit.
It is well-settled that in order for the State to avail itself of the presumption under La.R.S. 32:661 et seq., it must show that the State has strictly complied with the officially promulgated methods, procedures, and techniques in the chemical analysis offered as evidence in a case on trial. State v. Gregory, supra.
The rationale behind requiring strict compliance with these regulations (namely the D.P.S. intoxication test regulations) was set forth clearly in State v. Goetz, 374 So.2d 1219, 1220 (La.1979):
"Because an intoxication test conducted with chemicals of inferior quality could bring to bear a practically conclusive presumption of guilt against an innocent person, it is essential that the officially promulgated methods, procedures and techniques include a thorough analysis of the chemicals by a chemist under laboratory conditions to insure that they are of proper composition, strength and volume at the time a test is conducted."
We find that the State did meet the above requirement in that it did show strict compliance with the official procedures. In this case, the chemical analysis was made of a blood sample through the use of a gas chromatograph. Safeguards and standards for the use of the gas chromatograph are set out in the Department of Public Safety Rules for Breath and Blood Alcohol Analysis Methods and Techniques, Rule 12, most recently published in the "Louisiana Register", Volume 6, Number 11, November 20, 1980.
We find the proper chain of evidence was presented. Mr. Irving E. Johnson was the forensic scientist who conducted the test. He testified that he was familiar with the methods and regulations in effect for performing the gas chromatograph test and that he did perform the test pursuant to those methods and regulations. He further stated that he had not changed his procedures since 1970 and that one of the regulations he followed was from the Louisiana Register of December 20, 1975. As earlier stated the most recent procedures are set out in the Louisiana Register of November 20, 1980. We note however that in both publications the procedures are substantially the same and both refer to replicate testing. The scientist testified: that he had a permit from the Department of Public Safety to perform these tests, that he was familiar with the proper procedures which provided for replicate tests, that he followed the procedures and performed these tests. There is nothing in the record which rebuts Mr. Johnson's testimony.
Once the scientist testified as to what he did it was incumbent upon the defendant to show the existence of improper testing procedures. This he has not done. To suggest improper testing procedures is pure speculation. It is true that the scientist admitted one of the two vials of blood drawn from the defendant was sealed. Nevertheless these regulations are not clear as to whether or not they contemplate that replicate tests be made from one sample or whether it is intended that each sample of blood be tested. It seems logical that the regulation which requires the blood sampling kit to contain two vials is for the purpose of assuring that if one vial is damaged that there is an additional sample contained in another vial.
In any event we must view the evidence set forth in the transcript under the Jackson v. Virginia,[1] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, i.e., in a light most favorable to the State, and when such evidence is viewed in that light, we feel the State has carried its burden of *1352 establishing beyond a reasonable doubt that the rules and regulations and, in particular that rule requiring replicate testing, was complied with.
For the above and foregoing reasons this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 3
The defendant asserts that the trial court erred in finding the defendant guilty beyond a reasonable doubt of operating a vehicle while intoxicated since the State failed to show that the defendant was mentally and physically impaired, which is a requirement to show that the defendant was under the influence of alcoholic beverages as required by La.R.S. 14:98 and State v. Hightower, 238 La. 876, 116 So.2d 699 (1959).
The gist of the defendant's contention is that he was not physically or mentally impaired, despite a blood alcohol level of .15, as shown by the fact that he managed to stay on the road during the 115 mile per hour chase episode. This argument is specious.
The results of the blood alcohol test show that the defendant's blood alcohol level was .15, and it is thus presumed that he was under the influence of alcohol. La. R.S. 32:662(A)(1)(c). At his trial, the defendant was unable to rebut this presumption; to the contrary, he did not dispute the fact that he drove in excess of 100 miles per hour, ran stop signs and traffic lights, and passed cars in no-passing zones and on hills. Thus, it cannot be said that he rebutted the presumption of intoxication against him. The fact that the defendant was skillful enough to stay on the road during this episode is insufficient to rebut the presumption.
Even if it be assumed that such proof of physical or mental impairment is a necessary element of proof under the Hightower rationale, which was handed down eight years prior to the introduction of the legal presumptions of La.R.S. 32:662, it appears that the defendant cannot be excused under the test laid down in that case regarding the interpretation of the words "under the influence of alcoholic beverages" in La.R.S. 14:98. Hightower states:
"... we think, that the terms `intoxicated' or `under the influence of alcoholic beverages' have a certain and well-understood meaning, i.e., a person is intoxicated within the provisions of the statute when he does not have the normal use of his physical and mental faculties by reason of the use of alcoholic beverages (or narcotics), thus rendering such person incapable of operating an automobile in a manner in which an ordinary prudent and cautious man in full possession of his faculties, using reasonable care, would operate a motor vehicle under like conditions."
Under the above expressed standard, it is clear that the defendant's actions were not the actions of an ordinarily prudent and cautious man. For the foregoing reasons, this assignment of error is without merit.

DECREE
For the above and foregoing reasons the defendant's conviction and sentence for operating a vehicle while intoxicated are affirmed.
AFFIRMED.
STOKER, J., dissents and assigns reasons.
STOKER, Judge, dissenting.
I respectfully dissent as I am of the opinion that defendant's second assignment of error has merit. I agree that the regulations need not be introduced into evidence, but I do not agree that the State showed strict compliance with the regulations in this case.
The Louisiana Supreme Court in State v. Graham, 360 So.2d 853 (La.1978), discussed the burden placed on a defendant by the presumption established by a blood alcohol test and, with regard to that burden held:
"A conviction obtained through chemical test legislation, which not only destroys a defendant's presumption of innocence *1353 but also severely restricts any possibility of a defendant proving his innocence, must be reversed if not accompanied by all of the safeguards designed to insure reliable chemical analysis. The proof of the standard quality of chemicals used in the test by which the State seeks to set up the presumption against the defendant is crucial to a fulfillment of the defendant's constitutional due process guarantee and therefore must be educed in strict compliance with the standards promulgated in response to the decisions of this Court." (Emphasis added)
The Supreme Court has held further in State v. Gregory, 403 So.2d 1225 (La.1981), that:
"In order for the state to avail itself of the statutory presumption of a defendant's intoxication arising from a chemical analysis of his blood, La.R.S. 32:662, it must show
* * * * * *
(2) that the state has strictly complied with the officially promulgated methods, procedures and techniques in the chemical analysis offered as evidence in the case on trial." (Citations omitted)
In this case, the chemical analysis was made of a blood sample through the use of a gas chromatograph. Safeguards and standards for the use of the gas chromatograph are set out in the Department of Public Safety Rules for Breath and Blood Alcohol Analysis Methods and Techniques, Rule 12, most recently published in the "Louisiana Register", Volume 6, Number 11, November 20, 1980.
One of the requirements in the regulations for making a blood-alcohol analysis of the blood is: "Replicate analyses shall be performed in order to minimize the possibility of undetected errors."
On direct examination, the crime laboratory technician who analyzed the defendant's blood testified that he was aware of the methods and regulations and that he complied with them. He responded affirmatively to the prosecutor's question: "Did you follow those rules and actually make a test of these two samples that have been submitted as State Exhibit Number Six?" (Exhibit Six is the blood alcohol kit containing two samples of defendant's blood.) This leads us to believe that perhaps a test on each of the blood samples should have been made; however, on cross-examination it was established that only one of the samples had been tested. It is not even established by the evidence, however, that more than one test was made on the single sample. Because such was not established, we may not assume it was.
The evidence indicates that the drawing of two samples of blood is required. The regulations require the use of certain blood alcohol kits, and the kits used in this case in conformity with the regulations was equipped with two vials, ostensibly for the purpose of placing each blood sample in a separate container. In directing that replicate analyses be performed, it is not clear whether the regulations contemplate that the replicate tests may be made from one sample or whether it was intended that each sample of blood be tested. In any event, one thing is clear: the State did not establish beyond a reasonable doubt that any replicate analysis was made; therefore, it has failed to show strict compliance with the regulations.
The regulations for the blood-alcohol analysis of blood state further that:
"(2) The precision of the procedure shall be such as consistently to attain a standard deviation not greater than 0.003 g/dl in replicate analyses."
When questioned about the margin of error regarding the gas chromatograph, the technician was uncertain.
Throwing further doubt on the "strict compliance" with the regulations is the technician's statement that "I use the same procedure that I've used since 1970, and this is one of the pamphlets that I use Louisiana Register of "December 20th, 1975." As stated previously, the most recent publication was on November 20, 1980.
In light of the testimony discussed above, I respectfully disagree with the majority *1354 opinion on this issue. In my opinion, the State failed in its burden of proving there was strict compliance with the officially promulgated methods, procedures and techniques in the chemical analysis offered as evidence in this case.
I do not mean in this dissent to question either the qualifications of the laboratory technician to make the tests or his good faith. I accept the fact that the determination of the blood alcohol level made by the laboratory technician was correct on a more probable than not basis. But, as this is a criminal case, the more probable than not evidence test is not available to us. Also, through no amount of viewing the evidence in a light most favorable to the prosecution, Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), can the technician's testimony prove an essential element necessary for a conviction in this case. This is because the evidence in such cases as this must show that replicate tests were made, i.e., two separate tests. While one test may be quite correct, one test will not do.
Even if we assume that it is permissible under the required procedure to make the replicate tests from one of the two vials, the testimony of the laboratory technician does not establish that this was done. All the technician testified to (in response to the prosecutor's question) was that he tested each of the blood samples. This we know was not done, because the technician admitted that the vial containing one of the samples remained sealed. We cannot assume that what the technician actually did was to make two tests from the blood sample in the vial on which the seal had been broken. In fairness to the technician it should be pointed out that no one ever asked him whether he made two tests from one vial.
The majority shifts the burden of proof to the defendant, on the basis of the laboratory technician's testimony, to show the execution of improper testing procedure. I do not agree with that holding. The State bore the burden of proof to show strict compliance with the required testing procedure. It did not make this showing. Under the circumstances there is no occasion for a shifting of a burden of proof. The State simply failed to prove its case. The standard of review of Jackson v. Virginia, supra, can be of no help to the State in this case. The result is that the State is not entitled to presumption of intoxication provided in LSA-R.S. 32:662(A)(1)(c). Inasmuch as there is no presumption of intoxication there is nothing which the defendant is required to rebut.

ON REHEARING
DOMENGEAUX, Judge.
Defendant Corkran in his application for rehearing notes that in our original opinion we erroneously inserted the amended version of La.R.S. 14:98 which became effective January 1, 1984.
The defendant was arrested on January 30, 1983, and convicted on June 30, 1983. Thus, we inadvertently were in error by citing the amended version of La.R.S. 14:98. We should have inserted that statute in its prior form. The difference between the statute prior to its amendment and thereafter is that the previous version provided for a rebuttable presumption of intoxication when the defendant's blood alcohol test result was 0.10 percent or more by weight based on grams of alcohol per 100 cubic centimeters of blood. Under the statute as amended, the "illegal per se" statute, a test result of 0.10 or more is no longer rebuttable.
The mere fact that the amended statute was inadvertently reproduced is of no avail to the defendant because it is clear from the original opinion that the court applied the proper law, La.R.S. 14:98 before its amendment, allowing for a rebuttable presumption when a blood alcohol test result is 0.10 or more.
With this explanation, defendant's application for rehearing is denied.
DENIED.
NOTES
[1] Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second guessing" the triers of fact. See State v. Anderson, 440 So.2d 205 (La.App. 3rd Cir.1983), concurring opinion at 223, and cases cited therein.