559 So.2d 531 (1990)
STATE of Louisiana, Appellee,
v.
Kent Blake WELLS, Appellant.
Nos. 21331-KA and 21332-KA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1990.
Travis M. Holley & Associates by Scott McElroy, Bastrop, for appellant.
William J. Guste, Jr., Atty. Gen., James A. Norris, Jr., Dist. Atty., Charles L. Cook and Charles Brumfield, Asst. Dist. Attys., Bastrop, for appellee.
Before HALL, MARVIN and NORRIS, JJ.
NORRIS, Judge.
The defendant, Kent Blake Wells, was charged by bill of information with DWI, *532 first offense, in No. 21,331-KA. LSA-R.S. 14:98. He was charged by affidavit (traffic ticket) with failure to maintain control in No. 21,332-KA. LSA-R.S. 32:58. He was tried by a judge and found guilty on both counts. Before sentencing, he applied to this court for writ of review. We denied the writ, noting probable appellate jurisdiction under LSA-C.Cr.P. art. 912.1 B and adequate remedy on appeal. The trial court imposed, for DWI, 15 days in jail, a fine of $450, and court costs or 60 days in default; the 15 days in jail and $50 of the fine were suspended; one year's unsupervised probation was imposed, subject to specified conditions. For failure to maintain control, the court suspended all fines and costs.
Wells now appeals, urging only that the trial court erred in admitting three state exhibits into evidence. We affirm.
Deputy Danny Robinson was called to investigate a one-vehicle accident at 2:20 a.m. on December 12, 1988. When he arrived at the scene he found a 4-wheel drive Toyota truck in a ditch that ran along the southbound lane of La. 139. The truck was facing north. Wells exited the truck from the driver's side and met Dep. Robinson on the shoulder; he produced his driver's license and vehicle registration. Though Wells's speech was fair and not slurred, Dep. Robinson detected a moderate odor of alcohol. He administered a field sobriety test. Wells was able to count and recite the alphabet, but he lost his balance standing one-legged. Dep. Robinson also gave him a portable breath test. Based on all the test results, Dep. Robinson arrested Wells, drove him to the courthouse and gave him his rights. Wells then took an Intoxilyzer 5000 breath test; the result was a blood alcohol concentration reading of 0.10%.
At trial the state called Dep. Robinson, who testified to the facts as outlined above. It also called Mr. and Mrs. Joe Wilson, who had heard the accident and reported it. Over defense objection, the state introduced Exhibits S-4, S-5 and S-6. Exhibit S-5 is a copy of George Dunn's Department of Public Service ("DOPS"), Office of State Police permit. It is dated most recently January 4, 1988, but contains a declaration that Dunn has met all the requirements specified in the Louisiana Register of July 20, 1988 and is certified to perform maintenance and inspection on any Intoxilyzer 5000. Exhibit S-4 is an Office of State Police "Certificate of Inspection Machine Recertification Form" stating that "George Dunn, Breath Analysis Technician" inspected a particular Intoxilyzer 5000 on November 15, 1988, found it within the acceptable tolerance range and certified it in proper functioning condition. Exhibit S-6 is a printout from that same Intoxilyzer, reflecting that on December 12, 1988 at 3:21 a.m., Kent Blake Wells's blood alcohol content was 0.10%. The defense presented no evidence. The court found Wells guilty as charged.
On appeal Wells reiterates his objection to the three state exhibits: George Dunn, who is only a breath analysis technician, lacked the proper, regulatory credentials to inspect and certify an Intoxilyzer 5000; thus the machine's certification was invalid and the test results should not have been admitted; and without the test results, the remaining evidence is insufficient to support the DWI conviction.
The law authorizes chemical tests of the blood, breath, urine or other bodily substance of any person arrested on suspicion of DWI. LSA-R.S. 32:661 A. The chemical analysis, however, is not valid unless it is performed in accordance with methods approved by DOPS. LSA-R.S. 32:663. DOPS has therefore promulgated detailed regulations for all aspects of chemical breath analysis. Strict compliance with these regulations is upheld. In State v. Graham, 360 So.2d 853 (La.1978), the court explained the rationale:
A conviction obtained through chemical test legislation, which not only destroys a defendant's presumption of innocence but also severely restricts any possibility of a defendant proving his innocence, must be reversed if not accompanied by all of the safeguards designed to insure reliable chemical analysis. The proof of the standard quality of chemicals *533 used in the test by which the State seeks to set up the presumption against the defendant is crucial to a fulfillment of the defendant's constitutional due process guarantee and therefore must be educed in strict compliance with the standards promulgated in response to the decisions of this Court. 360 So.2d at 857-858.
This court is authorized to take judicial notice of administrative regulations. LSA-R.S. 49:950 et seq.; State v. Corkran, 448 So.2d 1346 (La.App. 3d Cir.1984), writ denied 450 So.2d 970 (La.1984).
The particular regulations at issue here involve the qualification of individuals who perform regular maintenance and inspection of breath analysis machines. 11 La. Reg. 256, effective March 1985, drew up detailed educational and training requirements. The person who satisfied these requirements and was authorized to certify Intoxilyzers was called a "breath analysis technician" or a "forensic scientist." George Dunn qualified as a breath analysis technician.
Three years later, DOPS promulgated new regulations. See 14 La.Reg. ___ (June 1988), effective July 20, 1988. The new regulations are virtually identical to the old; there are only two differences. First, the new regulations dispense with the requirement of on-the-job training in the "use of gaseous alcohol simulator standards used in calibration and calibration check." Second, the title of the person qualified is changed to "applied technology director," "breath analysis supervisor," "breath analysis instructor specialist," or "applied technology specialist." George Dunn held none of these titles but he unquestionably met the qualifications. The issue is whether a certification by a qualified man with an outdated job title is not valid.
Wells is technically correct to argue that all recertifications after July 20, 1988 should be performed by someone who holds one of the new titles. However, the change was one of title only and not substance. The trial court concluded, as do we, that this change had no effect on George Dunn's competency to recertify the instrument, the certification was valid and the test results admissible. This argument does not present reversible error.
As noted earlier, the jurisprudence mandates strict compliance with statutes and regulations as to chemical tests or else the test results are excluded. Wells cites State v. Rowell, 517 So.2d 799 (La.1988), where the state attempted to offer the results of a gas chromatograph test; the court found that regulations pertaining to Intoxilyzers were inadequate to assure reliable results. In State v. Gregory, 403 So.2d 1225 (La.1981), cited by the state, the prosecution offered no evidence of the inspector's qualifications. Both of these deficiencies affected the assurance of accuracy and mandated reversal.
In State v. Graham, supra, the court put these problems in the proper perspective. There the court held that the manufacturer's certificate was essential as foundation for introducing the test results of a photo electric intoximeter. The court noted, however, that some deficiencies could be excused as an "inconsequential departure from the painstaking methods" promulgated by DOPS. 360 So.2d at 857. We feel that the issue of George Dunn's title was an inconsequential departure from regulations. Dunn had the qualifications and there is no evidence that he deviated from DOPS regulations. There is no suggestion that the test results are inaccurate. The cases of Rowell and Gregory are therefore distinguished.
Because the test results were properly admitted, we need not address Wells's argument as to sufficiency of the evidence. For these reasons, the conviction and sentence are affirmed.
AFFIRMED.