457 So.2d 1172 (1984)
STATE of Louisiana
v.
William R. TANNER.
No. 84-KK-0608.
Supreme Court of Louisiana.
October 15, 1984.
*1173 Russell T. Tritico, Lake Charles, for relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard Knapp, Jr., Dist. Atty., Eugene Bouquet, Asst. Dist. Atty., for respondent.
MARCUS, Justice.
William R. Tanner was charged by bill of information with negligent homicide in violation of La.R.S. 14:32. He filed a motion to suppress the results of a breath analysis test performed on him on November 8, 1980. After a hearing, the trial judge granted the motion finding that a motion to suppress was the proper procedural vehicle to test the admissibility of the evidence and that the Department of Public Safety regulations on the maintenance of the auto-intoximeter were insufficient to insure the accuracy of the analysis. The court of appeal granted the state's application for certiorari, reversed and ruled that the trial judge abused his discretion in suppressing the results of the auto-intoximeter test. This court granted defendant's application for writs, set aside the judgment of the court of appeal and remanded the case to that court for briefing, argument and an opinion.[1] The court of appeal rendered an opinion finding that since the results of the test were constitutionally obtained, the trial judge erred in granting the motion to suppress pursuant to La.Code Crim.P. art. 703. The opinion did not address the merits of the motion.[2] This court again granted defendant's application for writs, remanded the case to the court of appeal and directed that court to address and decide the merits of the motion as ruled on by the trial judge.[3] The court of appeal upheld its original reversal finding that defendant failed to carry his burden of proving that the regulations of the Department of Public Safety, in effect at the time of defendant's examination, were inadequate to insure reliability and that the regulations did not require the state to introduce affirmative proof of the "known alcohol standard" used in calibrating the auto-intoximeter.[4] On defendant's application, we granted certiorari to review the propriety of using a *1174 motion to suppress as a procedural vehicle to raise an objection to the admissibility of the chemical test results and the merits of the motion.[5]
On November 8, 1980, defendant was involved in an automobile accident which resulted in the death of a passenger traveling in another vehicle. The state troopers who investigated the accident noticed alcohol on defendant's breath and an auto-intoximeter breath analysis test was administered. Defendant's reading was 0.189% which is over the level presumptive of being under the influence of alcohol. La.R.S. 32:662. Defendant was indicted for negligent homicide, La.R.S. 14:32. He later filed a motion to suppress the results of the breath analysis test.
Generally, questions of admissibility, relevance and weight of evidence are properly resolved at trial on the merits, not by pretrial motions. See State v. Garnier, 261 La. 802, 261 So.2d 221 (1972). However, the evidence in question in this case, the results of a chemical test, can give rise to a presumption that the person was under the influence of alcoholic beverages. La.R.S. 32:662. This rebuttable presumption of intoxication can be used to satisfy the "under the influence of alcohol" element of the state's case in a driving while intoxicated prosecution,[6] La.R.S. 14:98. Also, in negligent homicide prosecutions, the presumption can be used to establish the fact of intoxication from which the factfinder can determine criminal negligence.[7]State v. Green, 418 So.2d 609 (La. 1982). Consequently, it has been held that the wrongful introduction of a chemical analysis test result, which by law presumes a defendant to be intoxicated, is so prejudicial to the defendant that a resulting conviction cannot stand, even if there is other evidence of intoxication. State v. Morrison, 392 So.2d 1037 (La.1980); State v. Goetz, 374 So.2d 1219 (La.1979); State v. Graham, 360 So.2d 853 (La.1978). In view of the vital role that the legal presumption plays in determining guilt and the highly prejudicial nature of chemical test results if wrongfully introduced, it would serve the orderly administration of justice and further insure the defendant a fair trial if the admissibility of the test results could be determined in a pretrial proceeding.
In the present case, defendant sought to raise objection to the admissibility of the chemical test results by way of a motion to suppress. La.Code Crim.P. art. 703 provides that a defendant adversely affected may move to suppress any evidence from use at trial on the merits on the ground that it was unconstitutionally obtained. However, the evidence in the present case was constitutionally seized. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Therefore, a literal reading of art. 703 would seem to exclude the use of a motion to suppress to test admissibility. La.Code Crim.P. art. 3 provides that "[w]here no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions." Pursuant to this authority, this court has judicially extended the function of the motion to suppress to testimony alleged to be tainted by improper lineup procedures. State v. Wilkerson, 261 La. 342, 259 So.2d 871 (1972). For the reasons set forth above, we believe that the use of the motion to suppress to question the admissibility of chemical test results is "consistent with the spirit of the provisions of this Code" and should be permitted in keeping with the procedural guidelines set forth *1175 in art. 703(D). The burden of proving the admissibility of the chemical test results would be on the state as in the case of a confession or evidence seized without a warrant. Thus, pursuant to our authority under art. 3 to establish procedural guidelines in the absence of specific legislative procedural rules, we hold that a motion to suppress is available to question the admissibility of chemical test results that can result in the legal presumption of intoxication.
Now that we have established that the question of admissibility was properly raised by a motion to suppress, the merits of that motion must be reviewed. When the legislature authorized the chemical analysis of a motorist's blood and created a statutory presumption of intoxication in the event that his blood contained the requisite percent of alcohol, it conditioned the validity of the chemical test upon its having been performed according to methods approved by the Department of Public Safety. La. R.S. 32:663. This court has repeatedly recognized the importance of establishing safeguards to guarantee the accuracy of chemical tests. In a criminal prosecution, before the state may avail itself of the statutory presumption of defendant's intoxication, arising from chemical analysis of his blood, without violation of his constitutional due process guarantee of a fair trial, it must show that the state has promulgated detailed procedures which will insure the integrity and reliability of the chemical test, including provisions for repair, maintenance, inspection, cleaning, certification, and chemical accuracy. It must also show that the state has strictly complied with the promulgated procedures. State v. Krause, 405 So.2d 832 (La.1981); State v. Morrison, supra; State v. Goetz, supra; State v. Graham, supra; State v. Jones, 316 So.2d 100 (La.1975). Since it is permissible for the state to use the statutory presumption of intoxication in negligent homicide prosecutions, the same rigid admissibility requirements that exist in DWI cases must be satisfied in the instant case. See State v. Green, supra.
The first question presented is whether or not the recertification form, used by the state as prima facie proof of accuracy, was deficient because it failed to bear affirmative and detailed proof that the "known alcohol standard" used to calibrate the auto-intoximeter was pure and unadulterated. Specifically, did the state prove that the Department of Public Safety had promulgated sufficient guidelines to guarantee the accuracy of the auto-intoximeter test result.
In State v. Goetz, supra, the defendant contested the admissibility of a photo-electric intoximeter (P.E.I.) test result. The only evidence that the state offered as prima facie proof of the machine's accuracy was a copy of its recertification form which contained a statement that the ampule lot used in the test had been spot checked for performance. This was in accord with the applicable regulations in effect at the time. See Rule 1, 4(c), 4(d), 4 La. Register 390, 391 (1978). This court did not accept the recertification form as proof of chemical accuracy because the Department of Public Safety had not, at that time, established sufficient criteria to insure the reliability of a spot check of the P.E.I. ampules and because the state did not establish the qualifications of the person who performed the spot check. The photo-electric intoximeter is dependent upon the proper chemical composition, strength, and volume of the ampules used in the machine for its accuracy. If the chemicals involved in the test are of inferior quality, it is possible that a practically conclusive presumption of guilt would be brought to bear against an innocent person. See Goetz, supra. See Graham, supra; R. Donigan, Chemical Test and the Law, 71, 278-80 (2d ed. 1966).
It is significant that the photo-electric intoximeter involved in Goetz and the auto-intoximeter used here are two different machines, and the regulations concerning the maintenance procedure of each are different. See Rules, 4 La. Register 390-93 (1978). However, in State v. Morrison, supra, this court noted that while most of the jurisprudence concerning the requirements *1176 for admissibility of mechanical test results was addressed particularly to the photo-electric intoximeter, the principles underlying those pronouncements are concerned with the accuracy of the test results and are therefore applicable to both the photo-electric intoximeter and the auto-intoximeter.[8] It was also noted that the calibration of the auto-intoximeter, which is performed at its regular maintenance schedule, seems to be somewhat complex and involves a procedure where, among other tasks, the instrument is cleaned, a "known alcohol standard" is run to check the calibration, and, if necessary, the calibration is reset. The correct setting of the auto-intoximeter is indispensable to the accuracy of the test. Morrison, supra.
The pertinent evidence adduced at the suppression hearing was the auto-intoximeter's recertification form and the Department of Public Safety regulations. The Department of Public Safety has promulgated detailed regulations in order to insure the accuracy of the auto-intoximeter. Concerning maintenance, a recertification procedure is used whereby the machine is recalibrated at four-month intervals. The regulations in effect at the time defendant was tested, concerning the actual maintenance checks performed, called for the running of a "known alcohol standard" in order to check the machine's calibration. However, those regulations did not provide any criteria to determine if a pure and unadulterated "known alcohol standard" was used in this maintenance procedure. See Rule 6(c), 4 La. Register 390, 391-92 (1978). Also, it was not required that the recertification form, issued after the maintenance was complete, contain any affirmative proof that the "known alcohol standard" used was pure and unadulterated; yet, the regulations designated that this form was to be the prima facie proof of the auto-intoximeter's accuracy. See Rules 1 & 6(c), id. at 390-92. Clearly, the regulations called for the use of a "known alcohol standard" in recalibration. The conclusion that the alcohol standard used was to be known implies that someone had determined this to be so; however, the regulations are deficient because they do not designate how, when or by whom this was to be determined.[9] Therefore, from the face of the regulations themselves, it appears that the testing of the "known alcohol standard" for purity was a necessary step in the maintenance procedure in order to insure accuracy, and a recertification form, without affirmative proof of purity, would not be acceptable proof of the accuracy of the auto-intoximeter test result. Consequently, the state failed to prove that the maintenance regulations were sufficient to insure the accuracy of the chemical test result. Moreover, the state did not offer any additional evidence to establish that, despite the lack of adequate maintenance regulations, the machine's result was nonetheless accurate. This could have been done by producing evidence attesting to the purity of the "known alcohol standard" used to recalibrate the machine. Because of this conclusion, we do not reach the issue of whether or not the state has strictly complied with the remainder of the regulations promulgated by the Department of Public Safety. Hence, the motion to suppress was correctly granted by the trial court.

DECREE
For the reasons assigned, judgment of the court of appeal is reversed; judgment of the trial court is reinstated; and the case is remanded to the trial court for further proceedings.
LEMMON, J., concurs.
NOTES
[1] 427 So.2d 444 (La.1983).
[2] 432 So.2d 1186 (La.App.3d Cir.1983).
[3] 438 So.2d 1105 (La.1983) (Per Curiam).
[4] 446 So.2d 370 (La.App.3d Cir.1984).
[5] 449 So.2d 1352 (La.1984).
[6] Additionally, driving with a blood-alcohol concentration of 0.10 percent or more has been defined by the legislature to constitute driving while intoxicated under a recent amendment to La.R.S. 14:98.
[7] See also La.R.S. 14:32.1, where vehicular homicide is defined as the killing of a human being by an offender engaged in the operation of a motor vehicle when he is under the influence of alcoholic beverages as determined by chemical test administered under the provisions of R.S. 32:662 or when his blood alcohol concentration is 0.10 percent or more.
[8] We note that the issue raised in reviewing the instant case was raised in State v. Morrison, 392 So.2d 1037 (La.1980), but was not passed on as the opinion was decided on other grounds.
[9] However, under the 1980 regulations, it appears that the Department of Public Safety has made an attempt to deal with the criticism attending its former regulations. See Rules, 6 La.Register 660-63 (1980). This opinion addresses only the 1978 regulations which were in effect at the time defendant was tested on November 8, 1980. The new regulations went into effect on November 20, 1980.