FORET, Judge.
James Rowell was convicted of driving while intoxicated, second offense, a violation of LSA-R.S. 14:98 on August 6, 1986, in the City Court of Lafayette. Prior to trial, defendant filed a motion to suppress the results of a blood test taken from him in conjunction with this case. The motion was deferred until trial on the merits, after which it was denied by the trial judge. At the sentencing hearing, the defendant applied for supervisory writs pursuant to LSA-C.Cr.P. art. 912.1. We granted the writ to provide a full hearing on the issues involved. Defendant alleges that the trial court erred in denying his motion to suppress the results of a blood test and advances numerous assignments of error.
FACTS
Defendant was involved in an automobile accident on May 17, 1986, at approximately 3:20 A.M. in the city of Lafayette. Defendant’s car collided into the rear of a garbage truck which was stopped in the road. Police arriving at the scene found defendant lying in the grass, approximately twenty feet away from the accident. He was bleeding from the nose and face and complained of chest injuries. Police questioning defendant testified that defendant stated he did not see the garbage truck when he rear-ended it. One of the officers noticed alcohol on defendant’s breath. Defendant was then sent by ambulance to the hospital at approximately 4:15 A.M. and was met there by the same police officers who had been at the accident scene. Defendant was informed of his constitutional rights and informed of the rights listed on the intoxication rights form. The police officers testified that defendant stated he understood everything explained to him and that he wished to submit to a blood test, which was performed immediately thereafter.
ASSIGNMENT OF ERROR NO. 1
By this assignment, defendant alleges trial court error in its ruling that the defense had the burden of proof in the motion to suppress. Defendant filed a motion to suppress any and all testimony and documents relative to the blood alcohol examination. At the motion to suppress hearing, the trial court ruled that defendant had the burden of proof to have the evidence ruled inadmissible. However, the prosecutor volunteered and did proceed with direct examination of the witnesses so defense counsel was allowed to question the witnesses through cross-examination.
LSA-C.Cr.P. art. 703 provides that a defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. Part D. of the article provides that:
“D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant *980 or of any evidence seized without a warrant.”
Despite the requirement in Art. 703 that the motion to suppress is for use to suppress evidence that was unconstitutionally obtained, it has been held that the motion to suppress is the proper procedure to question the admissibility of chemical tests that can result in the legal presumption of intoxication. State v. Tanner, 457 So.2d 1172 (La.1984). Because the motion to suppress is the proper procedural vehicle, Art. 703 D. would generally be applicable. Consequently, the defendant would have the burden of proving the inadmissibility of a blood test. However, our Supreme Court in Tanner, after determining that the motion to suppress was the proper procedure to use, also stated in pertinent part:
“The burden of proving the admissibility of the chemical test results would be on the state as in the case of a confession or evidence seized without a warrant.” Tanner, at 1175.
The Court went on to state that:
“This court has repeatedly recognized the importance of establishing safeguards to guarantee the accuracy of chemical tests. In a criminal prosecution, before the state may avail itself of the statutory presumption of defendant’s intoxication, arising from chemical analysis of his blood, without violation of his constitutional due process guarantee of a fair trial, it must show that the state has promulgated detailed procedures which will insure the integrity and reliability of the chemical test, including provisions for repair, maintenance, inspection, cleaning, certification, and chemical accuracy. It must also show that the state has strictly complied with the promulgated procedures. State v. Krause, 405 So.2d 832 (La.1981); State v. Morrison, [392 So.2d 1037 (La.1980) ] supra; State v. Goetz, [374 So.2d 1912 (La.1979)] supra; State v. Graham, [360 So.2d 853 (La.1978)] supra; State v. Jones, 316 So.2d 100 (La.1975).”
Therefore, according to the dictates of Tanner, the State had the burden of proving the admissibility of the blood analysis. It appears that the trial court erred when it ruled that the defendant had the burden of proof in this hearing. We must now determine whether this erroneous ruling by the trial court constitutes reversible error. LSA-C.Cr.P. art. 921 provides that: “A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity or variance which does not affect substantial rights of the accused.” In this case, the court ruled that defendant had the burden of proving the evidence inadmissible. Thus, the evidence was presumed admissible unless defendant could prove otherwise. The State’s ease rested primarily on the evidence derived from the blood test. Had the proper standard been used, the State would have had the burden of proving that this evidence was admissible.
The presumption of intoxication is generally crucial to the State’s case, and the State must present substantial evidence in order to gain this presumption. The court in Tanner, as quoted above, outlined the numerous requirements that the State must prove in order to admit such evidence and gain the legal presumption of intoxication. In this case, defendant was allowed to cross-examine the witnesses as if he did not have the burden of proof. However, defendant was still required to prove the lack of the standards as outlined in Tanner which substantially benefited the State’s case and equally burdened the defendant.
A review of the burden that defendant was required to bear, contrary to the law, reveals that substantial rights of the defendant were adversely affected. The State cannot shift to the defendant the burden of disproving an element of crime charged by use of conclusive presumption or by shifting burden of persuasion. U.S. C.A. Const.Amend. 14; State v. Mattheson, 407 So.2d 1150 (La.1981), cert. den. 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983), reh. den. 463 U.S. 1249,104 S.Ct. 37, 77 L.Ed.2d 1456 (1983); State v. Lee, 465 So.2d 806 (La.App. 2 Cir.1985), writ den. 468 So.2d 572 (La.1985).
*981 In order to introduce the results of a blood analysis test, the State would have to prove the following:
(1) That the person who withdrew the blood sample was a person qualified under LSA-R.S. 32:664 (Defendant’s assignment of error # 2-6);
(2) The State must affirmatively show that the blood sample was taken and analyzed by a person who possessed the requisite qualifications and certifications set forth in LSA-R.S. 32:663 and LSA-R.S. 32:664;
(3) The State must prove that detailed methods, procedures, and techniques officially promulgated to insure the integrity and reliability of the chemical test were complied with (Assignments 9 & 10); and,
(4) That provisions for repair, maintenance, inspection, cleaning, chemical accuracy, and certification as well as proof of adherence to those methods, procedures and techniques occurred (Assignments 7 & 8).
State v. Tanner, supra; State v. Gregory, 403 So.2d 1225 (La.1981); State v. Morrison, 392 So.2d 1037 (La.1980); State v. Graham, 360 So.2d 853 (La.1978).
The regulations in effect do not address any of the areas which need to be regulated in order to insure the reliability of the blood alcohol test. In contrast to this, the regulations promulgated by the State for the breath analysis test, found immediately preceding the blood test regulations (11 La.Reg. 256), are much more detailed and do contain specific rules that address the areas which should be addressed for blood alcohol analysis.
CONCLUSION
In summary, because the State’s present regulations on blood analysis testing do not contain provisions for repair, maintenance, inspection, cleaning, certification, and chemical accuracy, and Tanner, supra, et al, specifically requires such promulgated standards, it appears that the State would fail in its burden of proving that sufficient regulations insuring the integrity and reliability of chemical tests were promulgated. Therefore, it appears that it would have been impossible for the Staj;e to prove the admissibility of the test results according to LSA-C.Cr.P. art. 703 and State v. Tanner, supra. Consequently, the burden placed upon the defendant by the erroneous trial court ruling placed the defendant at a distinct disadvantage.
DECREE
For the reasons mentioned above, the judgment of the trial court convicting defendant of a second offense DWI is reversed. Accordingly, the sentence is vacated. As a result of our disposition in this case, we need not decide on the admissibility of the evidence questioned in the motion to suppress. The matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.