CARTER, Judge.
Defendant, William E. Edwards, Jr., was charged by bill of information with driving a motor vehicle while intoxicated, a violation of LSA-R.S. 14:98, and with improper lane usage, a violation of LSA-R.S. 32:79. Defendant pleaded not guilty to the charge of driving while intoxicated.[1] He was tried before a jury[2] and found guilty of both offenses. For his conviction of driving while intoxicated, docket number 151420, defendant was sentenced to the following: (1) four months imprisonment, suspended on the condition that defendant be placed on probation for two years; (2) a $400.00 fine plus costs, in default of which he must serve sixty days in jail; (3) four eight-hour days of community service work; (4) participation in a substance abuse program; and (5) participation in a driver’s improvement program. For the conviction of improper lane usage, docket number 151422, defendant was sentenced *310 to pay a fine of $150.00, in default of which he must serve thirty days in jail.
Following his conviction, defendant filed a supervisory writ of review with this Court, docket number KW 87 0924. The writ was denied because the case had been properly tried before a jury and was therefore appealable. See LSA-Const. Article 5, § 10(A)(3). Subsequently, defendant filed an application for post conviction relief with the district court, seeking an out-of-time appeal. The district court granted defendant’s request.
In this appeal, defendant presents three assignments of error for review:
1. Evidence of defendant’s refusal to submit to a DWI test was improperly admitted at trial.
2. The evidence was insufficient to support the conviction of driving while intoxicated.
3. The trial court erred in allowing the sequestration order to be modified.
FACTS
Trooper Carl Bennett and Sergeant Walter Clement were working DWI detail in one-man units on the evening defendant was arrested for driving while intoxicated and improper lane usage. On the evening of May 30, 1986, Trooper Bennett observed defendant’s vehicle, with two wheels resting on the center line, stopped at a caution light at the intersection of Louisiana Highway 434 and U.S. Highway 190 in La-combe, Louisiana. Trooper Bennett became suspicious because defendant had stopped his vehicle, rather than slowing down at the caution light. Trooper Bennett then followed defendant’s vehicle for approximately two and one-half miles before signaling defendant to pull over to the shoulder of the road. As he followed defendant’s car, it weaved across the center line several times. Although convinced that the driver of the vehicle was under the influence of alcohol, during cross examination Trooper Bennett admitted that the weaving could have been attributable to something other than driving while intoxicated.
Trooper Bennett testified that as he spoke with defendant he noticed defendant’s eyes were bloodshot, a strong odor of alcohol was present on his breath and that, “while standing still, defendant would sway back and forth.” He further testified that defendant’s speech was slurred. Trooper Bennett testified that he attempted to have defendant perform a field sobriety test; however, defendant avoided performing the test and was consequently arrested and handcuffed.
As he followed defendant’s car, Trooper Bennett observed another vehicle driving somewhat erratically. He radioed Sergeant Clement for assistance. Trooper Bennett was already speaking to defendant on the shoulder of the road when Sergeant Clement arrived at the scene. Sergeant Clement testified that defendant was “kind of swaying a bit — bobbing” and that he could smell alcohol on defendant’s breath. Furthermore, he shined a flashlight into defendant’s face and noticed that his eyes looked glassy and bloodshot.
Defendant was transported to the Slidell Sheriff’s Office. He was given a rights form (relating to rights regarding chemical testing), but did not sign it. Trooper Bennett testified that he informed defendant of the DWI arrest, the consequences of the test, the consequences of refusal to take the test, and his Miranda rights. Defendant was given approximately four minutes to read the rights form. Trooper Bennett then asked defendant if he was prepared to take the test, at which time defendant stated that he was unsure. Trooper Bennett allowed defendant a few more minutes to read over the form and again questioned defendant as to his readiness to take the test. Defendant requested that he be allowed to speak with his attorney before assenting to or refusing the test and prior to signing any form. Trooper Bennett then told defendant that in so doing defendant had just refused to take the test and took the form from defendant. Defendant was then booked and charged with driving while intoxicated and improper lane usage.
Defendant’s version of the facts varies considerably from the factual rendition giv *311 en by Trooper Bennett. The defense presented testimony to the effect that defendant and a dinner companion each consumed one rum-and-coca-cola drink and one and one-half glasses of wine with a heavy meal on the evening of the arrest. These drinks were allegedly consumed over a three-hour period. Defendant testified that he was exhausted after a long day of engaging in manual labor. Consequently, his dinner companion drove her car to the restaurant where they dined. However, defendant’s companion did not drive after dinner because her contact lenses irritated her eyes when driving after dark. According to the testimony presented by the defense, the night defendant was arrested, the weather was hazy, and the defendant was driving below the speed limit and was being overly cautious because of his unfamiliarity with the roads in the area. Defendant’s dinner companion testified that she and defendant were not intoxicated and that defendant was not weaving or crossing the center line.
Further, defendant testified that he was never informed of the reason for his arrest or asked to perform a field sobriety test. Defendant testified that he was not read the rights form relating to rights regarding chemical testing. Defendant testified that he was never asked if he had consumed any alcoholic beverage or medication or if he were injured. He admitted that Trooper Bennett questioned him as to why his vehicle was weaving, but defendant testified that he told Trooper Bennett he was attempting to avoid oncoming traffic and the bright headlights. Defendant also stated that Trooper Bennett was verbally abusive while transporting defendant to the Slidell Sheriff’s Office.
On rebuttal, Trooper Bennett contradict ed defendant’s version of the facts, stating that defendant was informed of his arrest for driving while intoxicated on the shoulder of the road.
ASSIGNMENT OF ERROR NUMBER ONE[3]
By means of this assignment of error, defendant contends the trial court erred in admitting into evidence testimony concerning his refusal to submit to a PEI test. Specifically, defendant contends that Trooper Carl Bennett failed to read the rights form to him as required by the provisions of Louisiana’s Implied Consent Law. Defendant contends that no reference can be made to the breath test at trial unless and until the proper predicate is laid, citing LSA-R.S. 32:661C(1) and 32:666 A and B.
Trooper Carl Bennett testified that he gave defendant a form entitled “Rights Relating to Chemical Test for Intoxication.” He admitted that he did not read the rights form to the defendant. After ascertaining that defendant was able to read and understand the English language, he requested that defendant read the rights form. Trooper Bennett allowed defendant three or four minutes to read the form before asking him if he was prepared to take the test. Defendant responded that he was undecided. Trooper Benett allowed defendant several additional minutes to review the form and reiterated his request that defendant submit to a test. Defendant responded that he wanted to consult with his attorney prior to signing any form or taking any test. Trooper Bennett denied defendant’s request.
Trooper Bennett testified that the rights form clearly states that a refusal to take the test until able to consult with an attorney is the equivalent of a refusal. Trooper Bennett denied defendant’s request to consult with an attorney and again asked defendant if he was prepared to submit to the test. Defendant did not respond to Trooper Bennett’s question, and Trooper Bennett construed defendant’s silence as a refusal. Trooper Bennett testified that he never asked defendant if he understood the rights form. Under cross-examination, Trooper Bennett admitted he had explained the rights form to suspects when they were unable to understand or requested assistance. On rebuttal, Trooper Bennett testified that he first gave defendant his Miranda warnings when he pulled defendant over onto the shoulder of the road and *312 arrested defendant for driving while intoxicated.
Defendant testified he was asked to read a piece of paper and then asked if he was going to submit to the test. Defendant stated he told Trooper Bennett he was unsure because he had been unable to finish reading the form. Defendant testified that Trooper Bennett tore the form out of his hands and stated “then you just refused.” Defendant further testified he did not read the side of the rights form which states a defendant’s rights and informs him of the consequences of submitting to a PEI test and/or refusing a PEI test.[4]
After Trooper Bennett testified that defendant did not sign the rights form, the district attorney stated: “You said he refused the PEI test.” Defendant objected. The basis for his objection was that any testimony regarding the PEI test was improper without a proper predicate being laid. The objection was overruled. Defendant claims the record shows that Trooper Bennett failed to advise him of his Miranda rights, the consequences of refusal to submit to a test and the presumption of guilt which arises if defendant’s blood alcohol level is .10 percent or above. He points out that Trooper Bennett failed to follow the legislatively mandated procedures in LSA-R.S. 32:661C(1) and 32:666A(3) and B. Defendant alleges that, if he had taken the test, the results would have been inadmissible for failure to follow the statutory procedures; therefore, his refusal should likewise be inadmissible, citing State v. Tanner, 457 So.2d 1172 (La.1984).
Defendant’s reliance on State v. Tanner, supra, is misplaced. Tanner involved the state’s failure to prove procedures designed to ensure the reliability of the test results were followed. Therefore, the test results were suppressed. Defendant claims that the line of cases dealing with statutory violations of LSA-R.S. 32:663 is analogous to his case in that tainted evidence, obtained in violation of constitutional safeguards, is inadmissible into evidence.
The implied consent statute permits a suspect to refuse a test and requires the officer to advise the, suspect of his right to refuse, as well as his constitutional rights under Miranda, and that his driving privileges can be suspended for refusing to submit to the chemical test and for a test result that shows a blood alcohol level of .10 percent or above, if he submits to the chemical test. The right to refuse has a price. The Department of Public Safety may revoke the suspect driver’s license for six months. LSA-R.S. 32667B(2). The suspension of driving privileges is a legitimate penalty, assuming the appropriate procedural safeguards have been met. Those procedural safeguards are provided in LSA-R.S. 32:661, et seq.
LSA-R.S. 32:666 provides in pertinent part as follows:
A. A person under arrest for a violation of R.S. 14:98 or any other law or ordinance that prohibits operating a vehicle while intoxicated may not refuse to submit to a chemical test in any case wherein a traffic fatality has occurred or a person has sustained serious bodily injury and the person under arrest has refused or is unable to participate in a field sobriety test. In all other cases, a person under arrest for a violation of R.S. 14:98 or other law or ordinance that prohibits operating a vehicle while intoxicated may refuse to submit to such chemical test, after being advised of the consequences of such refusal as provided for in R.S. 32:661(C), subject to the following:
(1) His license shall be seized under the circumstances provided in R.S. 32:667.
(2) If he is a resident without a license or permit to operate a motor vehicle in this state, the department shall deny the issuance of a license or permit to such person for a period of six months after the date of the alleged violation.
*313 (3) Evidence of his refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages or any abused or illegal controlled dangerous substance as set forth in R.S. 40:964. However, such evidence shall not be admissible in a civil action or proceeding other than to suspend, revoke, or cancel his driving privileges.
Louisiana further discourages the choice of refusal to submit to a test by allowing the refusal to be used in any criminal action arising out of acts alleged to have been committed while the suspect was driving a motor vehicle upon the public highways of this state while intoxicated. LSA-R.S. 32:666A(3). The choice to refuse is not a constitutionally protected right, it is a matter of grace bestowed by the Louisiana legislature. See South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).
The relevant portion of LSA-R.S. 32:661 provides as follows:
C. (1) When a law enforcement officer requests that a person submit to a chemical test as provided for above, he shall first read to the person a standardized form approved by the Department of Public Safety and Corrections. The department is authorized to use such language in the form as it, in its sole discretion, deems proper, provided that the form does inform the person of the following:
(a) His constitutional rights under Miranda v. Arizona [86 S.Ct. 1602, 384 U.S. 436, 16 L.Ed.2d 694 (1966)];
(b) That his driving privileges can be suspended for refusing to submit to the chemical test; and
(c)That his driving privileges can be suspended if he submits to the chemical test and such test results show a blood alcohol level of .10 percent or above.
(2) In addition, the arresting officer shall, after reading said form, request the arrested person to sign the form. If the person is unable or unwilling to sign, the officer shall certify that the arrestee was advised of the information contained in the form and that the person was unable to sign or refused to sign. [Emphasis added]
By the clear terms of the statute, a suspect must be read a standardized form which, at a minimum, informs the suspect of his constitutional rights under Miranda v. Arizona and the consequence of refusing to submit to a chemical test or of taking the test if results show a blood alcohol level of .10 percent or above. See State v. McGuire, 493 So.2d 559 (La.1986).
The record reflects that Trooper Bennett did not read the standardized rights form to defendant. It further reflects that defendant was not asked whether or not he understood his rights[5] and, in fact, testified that he was unaware of his rights. It appears that, under the circumstances of this case, the trial court improperly admitted testimony concerning an alleged refusal to submit to a PEI test.
Defendant’s conviction for driving while intoxicated, under docket number 151420, is hereby reversed, the sentence vacated, and the matter remanded for a new trial.
ASSIGNMENT OF ERROR NO. TWO
Due to our disposition of assignment of error number one, we pretermit consideration of assignment of error number two as it relates to the driving while intoxicated conviction, charge no. 151420. Defendant has not contested the sufficiency of the *314 evidence to convict him of improper lane usage, charge no. 151422.
ASSIGNMENT OF ERROR NO. THREE
Due to our disposition of assignment of error number one, we pretermit consideration of assignment of error number three as it relates to the driving while intoxicated conviction, charge no. 151420. We will consider this assignment of error only as it relates to the charge of improper lane usage, charge no. 151422.
Assuming, arguendo, that there is merit to defendant’s contention, any error is harmless. The rebuttal testimony in no way related to the offense of improper lane usage. We find no prejudice to defendant. See LSA-C.Cr.P. art. 921.
Therefore, the conviction and sentence on charge number 151422, for improper lane usage, are affirmed.
CONCLUSION
For the above reasons, defendant’s conviction for driving while intoxicated is hereby reversed, the sentence vacated, and the matter remanded for a new trial. The conviction and sentence for improper lane usage are affirmed.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR NEW TRIAL ON THE CHARGE OF DRIVING WHILE INTOXICATED.

. There is no arraignment of record for the charge of improper lane usage. However, failure to arraign defendant is waived if defendant enters into trial without objecting thereto. LSA-C.Cr.P. art. 555; State v. Reado, 472 So.2d 271 (La.App. 1st Cir.1985). We find no objection of record.

. The instant charges were brought by separate bills of information and tried together. The maximum aggregate penalty for violation of these offenses exceeds six months in jail and/or a $500 fine. See LSA-R.S. 14:98 and 32:57, 79. Since the charges were separately billed, LSA-C. Cr.P. art. 493.1, which would limit the possible penalty to six months imprisonment and/or a $500 fine, is not applicable. See State v. LeBlanc, 509 So.2d 89 (La.App. 1st Cir.1987). Therefore, this matter was triable by jury. See LSA-Const. Article 1, § 19; LSA-C.Cr.P. art. 779.

. This assignment of error relates only to the charge of driving while intoxicated.

. The rights form given to defendant was referred to by Trooper Bennett as "the standard rights form.”

. A defendant is entitled to certain warnings clarifying that he has no constitutional right to refuse to submit to such a test, so as to prevent any confusion concerning defendant’s rights. See Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240,48 L.Bd.2d 91 (1976). In Doyle, the court noted that if a refusal to speak follows Miranda (the right to silence warning), then another warning (refusal to submit to chemical tests), which doesn’t clearly distinguish between speech in terms of commission of an offense or an exercise of Miranda rights, renders the silence ambiguous.