ORDER
WRIT DENIED:
Relator has not carried the burden of proof necessary to defeat the presumption of intoxication, as outlined below:
The presumption of intoxication is triggered by a .10 percent blood alcohol level. Operating a motor vehicle with a .10 percent blood alcohol level constitutes a violation of LSA-R.S. 14:98. State v. *213 Broussard, 517 So.2d 1000 (La.App. 3 Cir.1987), writ denied 519 So.2d 105 (La.1987), citing State v. Singer, 457 So.2d 690 (La.App. 4 Cir.1984), writ denied 458 So.2d 465 (La.1984). This theory was also upheld in State v. Tran, 542 So.2d 648 (La.App. 5 Cir.1989). The presumption of intoxication is therefore conclusive, i.e., one which relieves the state of having to present evidence beyond the predicate facts which trigger it.
In order to take advantage of the presumption, the state must meet the twofold burden set forth in State v. Tanner, 457 So.2d 1172 (La.1984). The first prong requires the state to show that detailed procedures which insure the integrity and reliability of the chemical tests which measure blood alcohol levels have been promulgated. The second prong requires the state to show that it strictly complied with these procedures when the test was conducted. LSA-R.S. 49:966(C) allows a court to take judicial cognizance of these promulgated procedures, thus making it unnecessary to re-try their merits every time a defendant moves to suppress the results of a chemical breath test. See State v. Corkran, 448 So.2d 1346 (La.App. 3 Cir.1984), writ denied, 450 So.2d 970 (La.1984). The practical effect of allowing the court to take judicial cognizance of the promulgated procedures is to relieve the state of proving the first prong of Tanner. The state therefore need only show that these procedures were strictly followed.
Once the state carries its burden under Tanner, the burden shifts to relator to show that the presumption of intoxication is unfounded. This would not be accomplished by introducing evidence to show that relator was not intoxicated — the presumption is conclusive and such evidence cannot be properly considered. Rather, relator must show that there are classes of individuals upon whom the Intox-ilizer 5000 is inaccurate, and then affirmatively place himself within one of those classes. In other words, the presumption itself is attacked as unfounded rather than the question of intoxication.
In the instant case, relator’s expert, while very familiar with the Intoxilizer 5000 due to the nature of his job, admitted that he was not qualified to determine blood to breath ratios, nor did he have the expertise or laboratory to do so. It appears that relator’s expert, who was called on cross examination, is not qualified to comment on the scientific accuracy of the Intoxilizer 5000. Even if he were so qualified, his testimony did not create the necessary reasonable doubt to overcome the conclusive presumption of intoxication. Assuming arguendo that Mr. Rando’s testimony created several classes of individuals upon whom the Intoxilizer 5000 is inaccurate — those with fever or varying blood to breath ratios, for example — relator has nevertheless failed to defeat the presumption because he did not affirmatively place himself within one of those classes. Relator was properly made to bear the above articulated burden, and failed. His assignments of error concerning the reliability of the Intoxilizer 5000 are thus without merit.