WHIPPLE, C.J.
laKelvin A., Paul sought judicial review of the suspension of his driver’s-license by the State' of Louisiana, Department of Public Safety, License Control and Driver Improvement Division (“Department of Public Safety”), which was suspended pursuant to LSA-R.S. 32:667 for his refusal to •submit to an approved chemical test for intoxication. The - Department of Public Safety now appeals the district court’s judgment ordering that the plaintiff’s driver’s license be immediately reinstated without restriction. For the following reasons, we reverse and remand with instructions.
*180 FACTS AND PROCEDURAL HISTORY
On August 25, 2013, Paul was arrested in West Baton Rouge Parish for, among other things, driving while intoxicated (“DWI”), second offense, in violation of LSA-R.S. 14:98.[1] After being transported to jail, Paul was advised of his rights regarding chemical testing, indicated he understood his rights, and signed the Ar-restee’s Rights Form. Paul was then instructed to submit a breath sample on the Intoxilyzer 5000, but he refused to take the chemical breath test. As a result, Paul’s license was seized and suspended for 365 days, pursuant to LSA-R.S. 32:667, governing the suspension of a person’s driver’s license for refusal to submit to an approved chemical test for intoxication. ■ ■ ■
After the suspension "of Paul’s license was affirmed by an administrative law judge (ALJ) with the Division of Administrative Law, IsPaul sought judicial review in the district court below.[2] Paul contended that because his DWI charge resulting from the August 25, 2013 arrest had been dismissed, he was entitled to have the suspension of his driver’s license recalled, as authorized by LSA-R.S: 32:667(H)(i).[3] The Department of Public Safety, on the other hand, argued that pursuant to LSA-R.S. 32:667(H)(3), which provides in part that the provisions of LSA-R.S. 32:667(H)(1) shall- not apply to a person who refuses to submit to an approved chemical test upon a second or subsequent arrest for DWI within ten years of the prior arrest, Paul was not entitled to have his license reinstated because he previously had been arrested for DWI in 2008.
Following an August 4, 2014 evidentiary hearing,[4] the district court concluded that applying LSA-R.S.. 32:667.(H)(3), which became effective before Paul’s 2013 DWI arrest at issue, but subsequent to his prior 2008 DWI arrest, would constitute a prohibited retroactive application of thé law to the case herein. Accordingly, by judgment dated September 24, 2014, the district court ordered that Paul’s license be immediately reinstated without restriction.
*181 pFrom this judgment, the Department of Public Safety appeals, contending that the district court erred in:
(1) determining that • LSA-R.S. 32:667(H)(3) is not applicable herein and immediately reinstating Paul’s driving privileges without restrictions;
(2) determining that the suspension of Paul’s license for refusal to submit to an approved chemical test upon a second or subsequent DWI arrest , was eligible for an early reinstatement pursuant to LSA-R.S. 32:667(H)(1), where LSA-R.S. 32:667(H)(3) prohibits such early reinstatement in cases. in which' the person refuses • to submit. to the chemical test for intoxication and has a prior DWI arrest within ten years of the current refusal;
(3) determining that the prohibition on early reinstatement contained in LSA-R.S. 32:667(H)(3) is an impermissible retroactive application if tfie prior DWI arrest occurred prior to the effective date of LSA-R.S. 32:667(H)(3); and
(4) reinstating Paul’s driving privileges without restrictions, in violation of LSA-R.S. 32:667(I)(l)(a).
DISCUSSION

Applicability of LSA-R.S. 32:667(H)(3)

(Assignments of Error Nos. 1, 2, and 3)
In these assignments of error, the Department of Public Safety challenges the district court’s determination that applying LSA-R.S. 32:667(H)(3) to prevent early reinstatement of Paul’s driver’s license constitutes an unlawful retroactive application of LSA-R.S. 32:667(H)(3).
To promote safety on Louisiana highways, the Louisiana Legislature enacted the Implied Consent Law, LSA-R.S. 32:661 et seq., which addresses the testing of persons suspected of operating motor vehicles while under the | .¡influence of alcoholic beverages or controlled dangerous substances. State v. Alcazar, 2000-0536 (La.5/15/01), 784 So.2d 1276, 1279; Flynn v. State, Department of Public Safety & Correction, 608 So.2d 994, 995 (La.1992). In furtherance of this purpose, LSA-R.S. 32:661(A)(1) provides in part that any person operating a motor vehicle upon the public highways of Louisiana “shall be deemed to have given , consent ... to a chemical test or tests of his blood, breath, urine, or other bodily[1]' substance for the purpose of determining the alcoholic content of his blood” if the person is “arrested for any- offense arising out of acts alleged to'have been committed while the person was ... under the influence of alcoholic beverages.”
■ In some instances, the Implied Consent Law does permit a suspect to refuse a chemical test; however, the right to refuse has a price. LSA-R.S. 32:666; LSA-R.S. 32:667; State v. Edwards, 525 So.2d 308, 312 (La.App. 1st Cir.1988). Specifically, where the appropriate procedural safeguards have been met, the Department of Public Safety “shall suspend” the suspect driver’s license pursuant LSA-R.S. 32:667(B)(2) for refusing to submit to an approved chemical test.
However, LSA-R.S. 32:667(H)(1) allows for immediate reinstatement of a suspect’s suspended license under certain circumstances, providing in pertinent as follows:
When any person’s driver’s license has been seized, suspended, or revoked, and the seizure, suspension, or revocation is connected to a charge or charges of violation of a criminal law, and the charge, or charges do not result in a conviction, plea of guilty, or bond forfeiture, the person charged shall have his *182 license immediately reinstated and shall not be required to pay -any reinstatement fee if at the time for reinstatement of driver’s license; it can be shown that the criminal charges have been dismissed or that there has been a permanent refusal to charge a crime by the appropriate prosecutor or there has been an acquittal. [Emphasis added.]
16Thus, pursuant to LSA-R.S. 32:667(H)(1), where the i seizure and suspension. of a motorist’s driver’s license is connected to a DWI charge (or other criminal charge) and the charge does not result in a conviction, guilty plea, or bond forfeiture, the motorist is entitled to have his license immediately reinstated. In- the instant case, Paul argued below that when the DWI charge was dismissed pursuant to a plea agreement, he was entitled have his license immediately reinstated pursuant to LSA-R.S. 32:667(H)(1).
Nonetheless, LSA-R.S. 32:667(H)(3), enacted by Acts 2012, No. 663, § 1, effective June 7, 2012, limits the applicability of the immediate reinstatement provision contained in subsection (H)(1) as follows: ■
Paragraph (1) of this Subsection shall not apply to a person who refuses to submit to an approved chemical test upon a second or subsequent arrest for R.S. 14:98 or 98.1 _ However, this Paragraph shall not apply if the second or subsequent arrest occurs more than ten years after the prior arrest.[5]
Relying upon LSA-R.S. 32:667(H)(3), the Department of Public Safety argued in the district court, and now argues on appeal, that Paul was not entitled to have his license immediately reinstated given the evidence it submitted of Paul’s prior 2008 DWI arrest.
As stated above, in concluding that LSA-R.S. 32:667(H)(3) did not apply herein, the district court reasoned that applying LSA-R.S. 32:667(H)(3), which although effective at the time of Paul’s 2013 DWI arrest at issue, was not in effect at the time of his prior 2008 DWI arrest, would constitute a prohibited retroactive application of'the law to this case. |7We disagree.
In enacting LSA-R.S. 32:667(H)(3) by Acts 2012, No. 663, § 1 the legislature did not expressly state its intent as to the prospective' or retroactive application of this law. Louisiana Revised Statute 1:2 provides that “[n]o' Section of the Revised Statutes is retroactive unless it is expressly so stated.”’ See also LSA-C.C. art. 6 (stating that “[i]n the absence of contrary legislative expression, substantive laws apply prospectively orily”). While LSA-R.S. 1:2, unlike LSA-C.C. art. 6, does not distinguish between substantive or procedural and interpretative laws, the jurisprudence has consistently regarded the two provisions as co-extensive, with LSA-R.S. l:2’s prohibition being construed to apply only to substantive, and not procedural or interpretative, legislation. Church Mutual Insurance Company v. Dardar, 2013-2351 (La.5/7/14), 145 So.3d 271, 279 n. 9. “Substantive laws,” for purposes.of determining whether a law should be applied retroactively, are those which establish new rules, rights, and duties, or change existing ones. Anderson v. Avondale Industries, Inc., 2000-2799 (La.10/16/01), 798 So.2d 93, 97.
*183 Subsection (H)(3) of 'LSA-R.S. 32:667 is clearly a substantive law, as it restricts, under certain circumstances, the statutory right granted a motorist in subsection (H)(1) to have his license immediately reinstated upon, among other things, dismissal of criminal charges connected or related to the suspension, thereby increasing the legal consequences of a refusal to submit to chemical testing within ten years of a prior DWI arrest. "Thus, because LSA-R.S. 32:667(H)(3) is a substantive law and the legislature did not expressly provide that it should be applied retroactively, LSA-R.S. 1:2 requires that it be given prospective application only. See Anderson, 798 So.2d at 97 (because former LSA-C.C. art. 2315.3 was substantive, LSA-C.C. art. 6 required that it be given prospective application only).
However, the analysis does not end there. Rather, we must determine whether the district court correctly concluded that application- of LSA-R.S. 32:667(H)(3) to the instant case would in fact constitute a prohibited retroactive application. In Walls v. American Optical Corporation, 98-0455 (La.9/8/99), 740 So.2d 1262, 1266, the Louisiana Supreme Court recognized the difficulty of determining whether a statute can be applied to a case, like the instant case, where some operative facts predated the enactment and others occurred after the statute’s effective date. The Court instructed that “[i]t is imperative to understand'that a law may permissibly change the future- consequences of an act and even the consequences of acts committed prior to the law’s enactment without operating retroactively,” explaining that a statute is not necessarily being im-permissibly retroactively applied merely because it is applied in a case arising from conduct that predated the statute’s enactment or because it upsets expectations based on prior law. Rather, the court must determine whether, the new law attaches new legal consequences to events completed before its enactment. Walls, 740 So.2d at 1266.
To determine whether a statute’s application to a, given factual scenario would constitute a retroactive application, the Court adopted the formula set forth by Planiol, identifying only two situations in which a law actually operates retroactively:
.[A] law is retroactive when it goes back to the past either to evaluate the conditions of the legality of an act, or to modify or suppress the effects of a right already acquired. Outside of those conditions, there is no retroactivity.
Walls, 740 So.2d at 1267 (quoting 1 M. Planiol, Treatise on the Civil Law, § 243 (La. St. L. Inst. Trans. 1959)). Thus, employing Planiol’s formula to determine whether impermissible retroactive application would occur if the provisions of LSA-R.S. 32:667(H)(3) were' applied in the instant case, we must ask whether this 'provision either: (1) evaluates the conditions of the legality of a past act, or (2) modifies or suppresses the effects of a right already acquired. If application of LSA-R.S. 32:667(H)(3) to the factual situation before us produces neither of these two consequences, then it operates prospectively only and will apply herein. See Walls, 740 So.2d at 1267.
In Walls, the Supreme Court held that applying the 1976 amendment of LSA-R.S. 23:1032 (which granted tort immunity to executive officers) to a wrongful death action where the silicosis exposure predated the statute, but the resulting death occurred after the effective date of the statute, did' not result in an impermissible retroactive application of the law. Walls, 740 So.2d at 1270. Employing Planiol’s formula, the Supreme Court concluded, first, that the 1976 amendment did not evaluate the conditions of liability or attach *184 new legal consequences to past acts because the provision granting immunity to an executive officer was based upon the individual’s “status” and was not a law governing “conduct.” Walls, 740 So.2d at 1267-1268. Secondly, the Court held that the law did not go “back to the past” to “modify or suppress the effects of a right already acquired,” because the wrongful death cause of action did not arise,'and thus the right in' the cause of action was not acquired, until the date of death. Walls, 740 So.2d at 1268-1270. Therefore, the Court held, the amendment to LSA-R.S. 23:1032 applied to the case therein and barred plaintiffs’ claims. Walls, 740 So.2d at 1270.
11flHowever, as the Louisiana Supreme Court later clarified in Anderson, the Court’s opinion in Walls does not stand for the proposition that the accrual of a cause of action during the time a law is in effect necessarily determines the law’s application to .the claim. Anderson, 798 So.2d at 98-99. As the Court explained, in a case such as Walls, where a new substantive law essentially extinguishes a cause of action, the date that the cause of action accrues is a crucial determining point in considering the second condition of Planiol’s retroactivity formula, ie., whether the law modified or suppressed the effects of a right already acquired. Anderson, 798 So.2d at 99.
The Court further. instructed that Pla-niol’s analysis does not only address the protection of vested rights (ie., the second prong of his analysis); it also prevents retroactive evaluation.of the conditions of the legality of past conduct (the first prong of Planiol’s analysis). Under the first prong of Planiol’s analysis as to whether a law impermissibly applies, or operates retroactively, “when a[n] intervening new law ... attaches new consequences to past events, the retroactivity event is the conduct or activity regulated.” Anderson, 798 So.2d at 99 (emphasis added). In Anderson, the Supreme Court, applying the first prong of Planiol’s analysis, determined that the application of former LSA-C.C. art. 2315.3 (authorizing punitive damages for wanton or reckless behavior in the storage, handling, or transportation of hazardous or toxic substances) to alleged wanton or reckless conduct occurring before the effective date of the article would result in an impermissible retroactive application .of the law because it evaluated the conditions of the defendant’s liability for its past conduct by setting forth new consequences of such conduct. Anderson, 798 So.2d at 100.
Inin the instant case, however, under either prong of Planiol’s analysis, application of LSA-R.S. 32:667(H)(3) to'the facts herein does not constitute an impermissible retroactive application. As to the first prong, the conduct regulated by subsection (H)(3) (ie., the conduct for which the motorist “can be punished,” as Paul phrases it) is a motorist’s refusal to submit, to an approved chemical test for intoxication within ten years of a prior DWI arrest. Thus, Paul’s August 25, 2013 conduct in refusing to submit to the Intoxilyzer 5000, which, resulted in the suspension of .his license herein, is the conduct regulated by LSA-R.S. 32:667(H)(3),1 not his earlier 2008 DWI arrest. Paul’s refusal to submit to chemical testing clearly occurred after the June 7, 2012 effective date of LSA-R.S. 32:667(H)(3). Accordingly, we are constrained to find that application of LSA-R.S.. 32:667(H)(3) to Paul’s conduct herein, of refusing to submit to an approved chemical test for intoxication within ten years of a previous DWI arrest, conduct that occurred after the effective date of subsection (H)(3), does not constitute an impermissible retroactive application under the first prong of Planiol’s formula *185 because it evaluates the conditions of Paul’s liability for conduct occurring after the effective date of subsection (H)(3). Cf. State v. Foret, 2014-0419R (La.App. 1st Cir.6/5/15), 174 So.3d 700, 708-09 (application of Sledge Jeansonne, Act, LSA-R.S. 22:1931 et seq., which authorizes civil penalties and other remedies against persons who engage in fraud to obtain payments from insurance, providers, to fraudulent conduct that predated the Act would constitute an impermissible retroactive application of the Act under the first prong of Planiol’s analysis).
Moreover, under the second prong of Planiol’s analysis, we likewise must conclude that application of LSA-R.S. 32:667(H)(3) herein would not constitute a prohibited retroactive application of the law. Under this prong |19pf the analysis, the determinative point in time separating prospective from retroactive application of an enactment is the date on which the cause of action accrues. Once a party’s-cause of action accrues, it-becomes a vested property right. Church Mutual Insurance Company v. Dardar, 2013-2351 (La.5/7/14), 145 So.3d 271, 280-281. Statutes enacted after the acquisition of such a vested property right cannot be applied so as to divest a party of his vested right in the cause of- action because such a retroactive application would contravene due process guarantees. A right is vested-when “the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit ... does not constitute a vested right.” Church Mutual Insurance Company, 145 So.3d at 281, quoting Sawicki v. K/S Stavanger Prince, 2001-0528 (La.12/7/01), 802 So.2d 598, 604, and Tennant v. Russell, 214 La. 1046, 1052, 39 So.2d 726, 728 (1949).
In the instant case, to the extent that a motorist is granted a right to immediate reinstatement of his license upon, among other things, dismissal, of related criminal charges, such a right certainly does not become a vested right, “independent of a contingency,” before a motorist’s license is even suspended. Under the facts herein, where Paul’s license was suspended because of his refusal to submit to chemical testing on August 25, 2013, and his related DWI charge was thereafter dismissed pursuant to plea agreement, both of these events occurred well after the June 7, 2012 effective date of' LSA-R.S. 32:667(H)(3). Thus, any limitations placed on the right to immediate reinstatemént of a suspended license by the enactment of LSAR.S. 32:667(H)(3)‘ clearly occurred before Paul would have accrued any right to reinstatement of his license following its suspension for his August | ta25, 2013 refusal to submit to the Intoxilyzer 5000. Accordingly, the application of LSA-R.S. 32:667(H)(3) under these facts would'not constitute á prohibited retroactive application of the law.
Thus, we conclude that under either prong of Planiol’s .retroactivity analysis, application of LSA-R.S. 32:667(H)(3) herein would not result in a retroactive application of the’law in violation of LSA-R.S. 1:2. Rather, the application of LSA-R.S. 32:667(H)(3) to a refusal to submit to chemical testing for intoxication when such refusal occurs after the statute’s effective date constitutes a prospéetive application of the law. See Anderson, 798 So.2d at 100. Accordingly, the district court erred in finding that the limitations on reinstatement imposed by LSA-R.S. 32:667(H)(3) could not be applied herein.
Moreover, because the evidence of record establishes that Paul had a prior DWI arrest within ten years of his August 25, *186 2013 refusal to submit to chemical testing for intoxication, we further conclude that the district court erred in ordering that Paul’s driver’s license be immediately reinstated, without requiring Paul to fulfill the full period of suspension of his license. Thus, the district court’s judgment must be reversed.

Installation of an Ignition Interlock Device

(Assignment of Error No. 4)
In its final assignment of error, the Department of Public Safety contends that the district court further erred in immediately reinstating Paul’s license without requiring that he install an ignition interlock device in his vehicle pursuant to LSA-R.S. 32:667(I)(l)(a). Louisiana Revised Statute | ⅛32:667(1)(1) requires the installation of an ignition interlock device under certain circumstances “as a condition of the reinstatement” of an individual’s driver’s license. Because we are reversing the district court’s judgment that ordered reinstatement of Paul’s license herein, this assignment of error is now moot.
CONCLUSION
For the above and foregoing reasons, the September 24, 2014 judgment of the district court is reversed in its entirety, and this matter is remanded to the district court with instructions to reinstate the suspension of Paul’s driver’s license as ordered by the ALJ and to dismiss Paul’s petition for judicial review with prejudice. See generally Brown, 2011-1224 at p. 10, 2012 WL 1986505 at *6. Costs of this appeal are assessed against appellee, Kelvin Paul.
REVERSED AND REMANDED WITH INSTRUCTIONS.

. The record indicates that Paul was stopped after 11:00 p.m. on the night of August 24, 2013, for improper lane usage. However, Paul was not actually placed under arrest until shortly after midnight on August 25, 2013.

. A person whose license has been suspended • may-request an administrative hearing to determine: whether the law enforcement officer had reasonable grounds to believe that the person who had been driving was under the influence of either alcoholic beverages or illegal controlled dangerous substances; whether the individual was placed under arrest; whether the officer warned the individual as provided in LSA-R.S. 32:661; arid, in the case of submittal, whether the individual voluntarily submitted to the chemical test and whether the test resulted in a finding of a blood alcohol level presumptive of intoxication. LSA-R.S. 32:668(A). After departmental remedies have been exhausted,- the driver has the right to file a petition for judicial review. LSA-R.S. 32:668(C). ' Although thq decision of the ,ALJ is not found within the record, the parties do not dispute that the 365-day suspension of Paul’s license was affirmed by the Division of Administrative Law. See Brown v. State, Department of Public Safety, License Control and Driver Improvement Division, 2011-1224, p. 2, n. 1 (La.App. 1st Cir.6/1/12), 2012 WL 1986505, *1, n. 1 (unpublished).

, The DWI charge was dismissed as part of a plea agreement.

. On judicial review, the district court is required to conduct a trial de novo to determine the propriety of the suspension. Although it is an action for judicial review of a decision from an administrative hearing, the burden of proof is placed on the plaintiff. LSA-R.S. 32:668(C); Millen v. State, Department of Public Safety and Corrections, 2007-0845 (La.App. 1st Cir. 12/21/07), 978 So.2d 957, 961.

5. While not at issue herein, we note that as originally enacted by Acts 2012, No. 663, § 1, LSA-R.S. 32:667(H)(3) further provided that LSA-R.S. 32:667(H)(1) shall not apply tó a person who refused to submit to an approved chemical test upon a second or subsequent arrest for "a parish or municipal ordinance that prohibits driving a motor vehicle while operating a vehicle.” (Emphasis added). In the next legislative session, by Acts 2013, No. 388, § 3, the legislature corrected this language by changing "operating a vehicle” to "intoxicated.”