JOSEPH E. COREIL, Judge.
Defendant, George Ristom, Jr., was indicted on May 4, 1990, for vehicular homicide, a violation of La.R.S. 14:32.1. After filing numerous pretrial motions, which were ultimately denied, defendant withdrew his not guilty plea and entered a conditional plea of guilty on August 12, 1991, reserving his right to seek review of pretrial motions pursuant to State v. Crosby, 338 So.2d 584 (La.1976). A presentence investigation report was ordered, and he was sentenced to two years imprisonment without hard labor, and a $2,000 fine or, in default, to serve six months in the parish jail. Of the two years imprisonment, all .but one year was suspended and defendant was placed on five years supervised probation, subject to conditions that defendant pay a $20 monthly supervision fee, refrain from criminal conduct, and report to his probation officer as directed. Ristom appeals, assigning three errors: failure to grant the motion to suppress; failure to grant the motion to quash; and excessiveness of sentence.
FACTS
On February 19, 1990, Ristom, who was 69 years old at the time, drank four or five beers before going to a meeting at the VFW Hall in Orange, Texas. After leaving the meeting, defendant went to a bar in Orange, Texas, and had one beer. He left that bar to go to another bar on Highway 109 in Vinton, Louisiana. A 29-year-old woman at the bar in Orange, Texas, rode to Vinton with defendant.
While driving from Orange, across the state line to Vinton, defendant did not realize he was on Interstate 10; he told the investigating officer, State Trooper Kenneth Bailey, that he thought he was on Highway 90. When defendant passed the correct exit, he tried to go back and simply made a U-turn on the highway, which put him traveling west-bound on the east-bound lanes of I — 10. Defendant thereafter collided head-on with a car being driven by Jennifer Mills. Occupants in both vehicles had to be extricated by special equipment before being transported to a hospital.
Miss Mills, an 18-year-old student, was critically injured and endured thirty-three days in the hospital until she finally died from massive injuries received in the accident.
Trooper Bailey arrived at the scene of the accident moments after it happened. Defendant was pinned in his car, but he spoke with Trooper Bailey. Trooper Bailey smelled alcohol on defendant and, after he was put in an ambulance, defendant was placed under arrest and advised of his rights. At the hospital, a blood sample was drawn from defendant after the necessary procedures and forms were completed, one hour and forty-five minutes after the accident. Later analysis revealed defendant’s blood alcohol level to be 0.16%.
PRIOR PROCEEDINGS
Ristom filed a motion to suppress, which was denied after a lengthy hearing. He objected and applied for supervisory writs to this Court. Defendant’s two assignments of error in his writ application were, (1) that the blood analyst’s degree in biolo *657 gy education did not satisfy the requirement of the 1988 regulation that a blood analyst have a degree in one of the chemical, physical, or biological sciences and, (2) that the 1988 regulation was too vague, because of the education requirements for blood analysts, to ensure the integrity and reliability of analysis.
This Court, in an unpublished opinion, denied defendant’s writ application, finding no error in the trial court’s ruling denying the motion to suppress. Subsequently, the Louisiana Supreme Court denied defendant's writ application in State v. Ristom, 578 So.2d 932 (La.1991).
After further hearings, on defendant’s motion to quash and other issues raised in defendant’s motion to suppress, Ristom entered a guilty plea conditioned upon the review of the rulings on the pretrial motions. State v. Crosby, supra.
ASSIGNMENT OP ERROR NO. 1
By his first assignment of error, Ristom contends that the trial court erred in refusing to suppress the results of his blood test.
Ristom challenges the qualifications of Patrick Ieyoub, the blood alcohol analyst, and the validity of the regulation concerning an analyst’s qualifications. After listening to the testimony of Patrick Ieyoub and receiving the pertinent regulation into evidence, the trial court ruled that Ieyoub met the qualifications of Louisiana Register Vol. 14, No. 6, June 20, 1988, Title 55 § 553(2), and was qualified to testify as an expert concerning blood alcohol analysis. Within this ruling, the trial court found that Ieyoub’s degree in biology education satisfied the requirement of a bachelor’s degree in one of the chemical, physical, or biological sciences.
The regulation concerning blood alcohol testing was amended in 1988 as a result of the Louisiana Supreme Court’s ruling in State v. Rowell, 517 So.2d 799 (La.1988). Rowell did not rule that the 1985 regulation concerning the college degree required of an analyst was insufficient. Instead, the court in Rowell stated:
“The regulations concerning the qualifications of a person seeking a permit to conduct blood analysis are insufficient because they do not specify the type of proficiency testing required.” Rowell, 517 So.2d at 802.
The 1985 regulation stated:
“II. ANALYSIS OF BLOOD
001. PERMITS
All persons seeking to be authorized to conduct blood analysis shall:
Section 1. Make application to the Department of Public Safety and Corrections Crime Lab for permit or renewal of permit.
Section 2. Have a Bachelor of Science in chemistry, physics, biology, zoology, medical technology, or a related field.
Section 3. Conduct proficiency testing set up by the State Police Crime Laboratory.
Section 4. Permits shall be effective when issued for a period of five years from 'the date inscribed thereon.” (emphasis added)
The language of the pertinent regulation was amended in 1988, as follows:
“§ 553. Certification; Renewal of Certification; Suspension, Revocation or Cancellation
A. All persons seeking certification to conduct blood alcohol analysis shall:
1. make application to the Louisiana State Police Crime Laboratory;
2. successfully complete an accredited college or university course of study which meets all academic requirements for at least a bachelor’s degree and receive a degree in medical technology or one of the chemical, physical, or biological sciences;
3. successfully complete a course of at least 24 hours instruction concerning blood alcohol testing conducted by the Louisiana State Police Crime Laboratory. This course shall include, but not be limited to the following: procedures, pharmacology and physiology of alcohol, theory of gas chromatography, maintenance, repair, and inspection of instru *658 mentation, preparation and analysis of blood samples;
4. conduct certification testing set up by the Louisiana State Police Crime Laboratory.”
(emphasis added)
As noted earlier, the college degree requirements under the 1985 regulation were not found insufficient in Rowell. In Rowell, the chemist who performed the analysis of the blood alcohol content had a Bachelor of Science degree in forensic science, and his qualifications were not disputed. Therefore, the 1985 regulation, concerning the college degree required of a blood analyst, impliedly included a degree in forensic science and was considered sufficient by the Louisiana Supreme Court to ensure the reliability of test results.
Interpreting the 1988 amended regulation as Ristom contends gives § 553 a preposterous and odd meaning. Mr. Ieyoub’s college degree was sufficient under the 1985 regulation to qualify him to analyze blood tests; yet, according to Ristom, this college degree is not sufficient under the 1988 regulation. If the courts were to adopt defendant’s reasoning, the forensic chemist in Rowell would not be qualified to conduct blood alcohol analysis since his college degree is not titled “medical technology,” “chemical science,” “physical science,” or “biological science.” Instead of having the catch-all phrase of “a related field,” as in the 1985 regulation, the 1988 regulation was concerned that the substance of acceptable degrees be in the areas of medical technology or one of the chemical, physical, or biological sciences.
In this case, the trial judge determined that Mr. Ieyoub’s degree in 1974 in biological education, together with a total of seventy-eight hours of completed college science courses, was sufficient under the 1988 regulation to qualify as a degree in a biological science.[1] We find no error in this finding.[2]
In the alternative, Ristom argues that if this Court should find that § 553.A.2 included a degree in biology education, then the trial court erred in failing to find Louisiana Register Vol. 14, No. 6, June 20, 1988, Title 55 § 553(2) too vague to ensure the integrity and reliability of the blood alcohol analysis of a defendant’s blood.
Ristom argues that the 1988 amendment of the regulation was intended to require an analyst to have a bachelor degree in medical technology, biology, chemistry, or physics, and that if this was not the intent, the regulation is too vague to ensure reliability of test results.
The change in the language of the regulation has been noted. If the drafters of the 1988 regulation had intended to require an analyst to have a bachelor degree solely in medical technology, biology, chemistry, or physics, then they would have kept the language of the 1985 regulation and simply deleted “or a related field.” The drafters of the regulation, particularly the 1988 version, obviously recognized that different colleges and universities gave different titles to their degrees in the fields of biology, chemistry, and physics. To avoid constant amendments of the regulation, the drafters sought to qualify analysts with college degrees related to the sciences by using the new language “one of the chemical, physical, or biological sciences.” As such, we find no error in the trial court’s ruling, denying Ristom’s motion to suppress.
ASSIGNMENT OF ERROR NO. 2
By his second assignment of error, Ristom contends that the trial court erred in denying his motion to quash the indictment which was based upon the alleged unconstitutionality of La.R.S. 14:32.1.
Ristom argues that the blood alcohol test, registering 0.16%, established his blood alcohol level at the time the sample was drawn, approximately two hours after the accident, but not at the time of the *659 accident. He contends that in order to accurately extrapolate, or project, the defendant’s blood alcohol level at the time he had the accident, a second blood sample would have to be drawn at a later time to see if the defendant’s first blood alcohol level was rising while in the absorption phase or decreasing while in the elimination phase.
Ristom does not attack the accuracy of the blood alcohol test which measured his blood alcohol level at 0.16%. Rather, he attacks the constitutionality of La.R.S. 14:32.1 A(2)[3] because it does not require the State to obtain two blood samples at separate time intervals to more accurately determine a defendant’s blood alcohol level at the time the defendant was operating the motor vehicle.
Presently, the State’s use of a blood alcohol test registering 0.10% or more, at the time of the test, necessarily involves an interlocking inference that the defendant’s blood alcohol level was the same or higher at the time of the accident. In other words, the use of the blood alcohol test as evidence of guilt presumes the defendant was in the elimination phase at the time of the test. Under this analysis, the burden shifts to the defendant to present any affirmative defenses, i.e., that his body was in the absorption phase rather than the elimination phase at the time the test was taken. Ristom argues that, without the requirement that a second blood sample be drawn at least thirty minutes later, any conviction under La.R.S. 14:32.1 A(2) constitutes a denial of due process of law.[4]
The presumption that a defendant is in the elimination phase at the time of the test is shown clearly in State v. Spence, 418 So.2d 583 (La.1982). In Spence, the defendant argued that the blood alcohol test results should have been excluded from evidence because the advice of rights form allegedly gave the arrested person the impression that he had no right to an attorney.
The Supreme Court, in rejecting Spence’s contention, stated at pages 586, 587:
“The clause cannot reasonably be interpreted as implying that an arrested person does not have a constitutional right to consult a lawyer. It merely informs a person that he cannot delay taking the test until he has consulted a lawyer, without incurring the risk that he will lose his license.
The reason for this rule is obvious. The relevant point in time for measuring blood-alcohol content is immediately after the driver is stopped, because the blood-alcohol percentage decreases with the passage of time. Were the result otherwise, the driver could effectively defeat the state’s efforts to conduct a prompt test by requesting that he be given the opportunity to consult a lawyer.”
(emphasis added)
As stated by the Louisiana Supreme Court in State v. Taylor, 463 So.2d 1274, 1275 (La.1985): “[U]nder the vehicular homicide statute, the state, in order to convict, must prove that an offender’s unlawful blood alcohol concentration combined with his operation of a vehicle to cause the death of a human being.” (Emphasis added.) Taylor stood for the proposition that the vehicular homicide statute should be construed to require proof of a causal *660 relationship between an operator’s unlawful blood alcohol concentration and the death of a victim in order to convict. Necessarily, within this construction, the vehicular homicide statute requires proof of an operator’s unlawful blood alcohol concentration at the time of the offense, rather than merely at the time of the test, when proving an essential element, i.e., a blood alcohol concentration of 0.10% or more, of the crime of vehicular homicide under La. R.S. 14:32.1 A(2).
Ordinarily, the time of the test as opposed to the time of the offense has not been at issue. The jurisprudence has relieved the State of its burden of proof involving the defendant’s blood alcohol level/intoxication at the time of the offense, either through a presumption of intoxication pursuant to La.R.S. 32:662 or by proof of an essential element of the crime (blood alcohol content of 0.10% or more) by the mere introduction of the results of a
blood alcohol test. See State v. Broussard, 517 So.2d 1000 (La.App. 3 Cir.1987), writ denied, 519 So2d 105 (La.1987); State v. Frederick, 561 So.2d 211 (La.App. 3 Cir.1990), writ denied, 564 So.2d 331 (La.1990); State v. Tran, 542 So.2d 648 (La.App. 5 Cir.1989).
This Court was recently faced squarely with this issue, although involving a breathalizer test, in Collins v. La. Dept. of Public Safety, 601 So.2d 810 (La.App. 3 Cir.1992). In Collins, the trial court reversed the decision of an administrative law judge based upon its finding that the chemical test for intoxication, administered forty minutes after stopping Collins, was invalid because it was not administered sufficiently close in time to the arrest.
In reversing the trial court, this Court stated, at page(s) 812:
“The trial court based its decision on its belief that the test was administered too long after plaintiff last operated her vehicle to conclusively determine if plaintiff was guilty of driving while intoxicated at the time she was stopped. The issue of the proper delay period for administering a breathalyzer test after the last operation of the vehicle to a person suspected of D.W.I. has never been addressed by any court in this state. However, a review of several other state’s jurisprudence indicates a breathalyzer test must be administered within a reasonable time after the defendant was actually operating his vehicle. See, State v. Tischio, [107 N.J. 504] 527 A.2d 388 (N.J.1987) and State v. Taylor, [132 N.H. 314] 566 A.2d 172 (N.H.1989). Such laws have arisen as a result of the difficulty in ascertaining a person’s blood alcohol level at the precise time of operating the vehicle given that the absorption and elimination rates of alcohol varies from individual to individual. Furthermore, a person’s blood alcohol content increases for a period of time after consumption and then begins to decrease as the alcohol is eliminated, principally through metabolism. See, 2 D. Nichols, Drinking/Driving Litigation section 23:01 (1985). For this reason, many jurisdictions have held as long as such tests are administered within a reasonable time from the operation of the vehicle, the test is valid. See, Nichols, supra. We agree with this reasoning and we hold that all blood alcohol tests must be administered within a reasonable time after the driver’s last operation of the vehicle. What constitutes a reasonable time generally varies given the facts and circumstances of each case. Some courts have held such tests administered fifteen minutes after operation of the vehicle were invalid while others have held tests administered as late as two and one-half hours after operation of the vehicle are valid. See, Nichols, supra.”
In applying a case-by-case analysis, we find that the blood alcohol test given Ris-tom, within two hours of the accident and registering at 0.16%, was given within a reasonable time after Ristom’s last operation of the vehicle. We find that the trial court properly denied Ristom’s motion to quash based upon the alleged unreliability of the test and that, under the facts presented, the test results were valid. Defendant’s contention is well taken, especially under facts wherein a defendant’s blood alcohol content was near 0.10% and was taken shortly after the last alcohol was *661 consumed, thereby increasing the likelihood that the defendant was in the absorption phase at the time of the test. We do not find that the reliance, in this case, upon Ristom’s blood alcohol test denies him due process or unconstitutionally shifts the burden of proof from the State. As such we find no error in the trial court’s denial of defendant’s motion to quash.
ASSIGNMENT OF ERROR NO. 3
By his final assignment of error, Ristom claims that his sentence is excessive. Ristom was sentenced to two years without hard labor, with all but one year suspended, and placed on five years supervised probation. Defendant was also fined $2,000 or, in default of payment, ordered to serve six months in the parish jail.
The statutory range of sentences for vehicular homicide is not less than' two years and not more than fifteen years, with or without hard labor, and a fine of not less than $2,000 nor more than $15,000. Ris-tom received the statutory minimum sentence and fine permitted by law. He contends that all of his sentence should have been suspended and that he should have been placed on probation.
After our review of the record, presen-tence investigation, and appellate briefs, considering the facts of Ristom’s crime, his background, and the consequences of his conduct, we do not find that his sentence is excessive.
CONCLUSION
Based upon the foregoing, the sentence and conviction of George A. Ristom, Jr. are affirmed.
AFFIRMED.

. A similar issue was reached by the Second Circuit in State v. Wells, 559 So.2d 531 (La.App. 2 Cir.1990), with similar results.

. The validity of Ieyoub’s required permit is not at issue herein. We find that examining every analyst's college transcript is more properly the duty of the agency by whom the requested permit is issued.

. La.R.S. 14:32.1 A(2), the statute under which Ristom was charged, states as follows:
"A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, vessel, or other means of conveyance whether or not the offender had the intent to cause death or great bodily harm whenever any of the following conditions exist:
(2) The offender’s blood alcohol concentration is 0.10 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.”

. The distinction between a defendant’s blood alcohol level at the time he operated a motor vehicle and at the time he was tested is not a novel argument. See State v. Trahan, 534 So.2d 73 (La.App. 3 Cir.1988); State v. Reed, 541 So.2d 905 (La.App. 3 Cir.1988); State v. Willson, 534 So.2d 55 (La.App. 3 Cir.1988). (State failed to prove that defendants had not ingested alcohol between time of offense and time of arrest.)