906 So.2d 616 (2005)
STATE of Louisiana
v.
John Lee HARDEMAN.
No. 2004 KA 0760.
Court of Appeal of Louisiana, First Circuit.
February 18, 2005.
*620 Joseph L. Waitz, Jr., District Attorney, Ellen D. Doskey, Assistant District Attorney, Houma, for State of Louisiana.
Sherry Watters, Louisiana Appellate Project, New Orleans, for Defendant-Appellant John Lee Hardeman.
Before: PARRO, KUHN, and FOIL,[1] JJ.
PARRO, J.
The defendant, John Lee Hardeman, was charged by amended bill of information with operating a vehicle while intoxicated (DWI), fifth offense (instant offense), a violation of LSA-R.S. 14:98, and he pled not guilty.[2] Predicate number one was set forth as the defendant's July 30, 1999 guilty plea to DWI committed on July 18, 1998.[3] Predicate number two was set forth as the defendant's April 28, 2000 guilty plea to DWI committed on August 16, 1999.[4] Predicate number three was set forth as the defendant's March 20, 2002 guilty plea to DWI committed on January 4, 2002.[5] Predicate number four was set forth as the defendant's March 20, 2002 guilty plea to DWI committed on December 4, 2001.[6] Following a jury trial, the defendant was found guilty as charged by unanimous verdict. He moved for a new trial and for a post-verdict judgment of acquittal, but the motions were denied. He was sentenced to fifteen years at hard labor without benefit of probation, parole, or suspension of sentence. He moved for reconsideration of the sentence, but the motion was denied. He now appeals, designating three assignments of error. We affirm the conviction and the sentence.

FACTS
Houma Police Department Officer Rory Olds gave the following account of the events surrounding the arrest of the defendant for the instant offense. On July 12, 2003, at 7:43 p.m., Officer Olds was notified *621 that an anonymous caller had advised the police that a white male, who appeared to be intoxicated and who might drive away, was getting into a blue truck with a red tailgate at the Shop-n-Bag store near Lafayette Street and Park Avenue. On Park Avenue near Lafayette Street, Officer Olds began following a vehicle fitting the description given by the caller. The vehicle turned onto Belanger Street without violation of any traffic laws, but then parked in a no parking zone. The area had a yellow curb and the words "NO PARKING" were painted in yellow on the roadway in front of the yellow curb. The defendant exited the vehicle, and Officer Olds activated his police emergency lights and approached the defendant. Officer Olds asked the defendant why he had parked in the no parking area, and the defendant stated he was going to speak with someone and would be leaving shortly. Officer Olds detected an odor of alcohol on the defendant's breath. Officer Olds asked the defendant whether he had had anything to drink, and the defendant answered negatively. When asked to produce his driver's license, the defendant indicated the license had been suspended. The defendant failed horizontal-gaze nystagmus, one-leg stand, and walk and turn field sobriety tests. Thereafter, he advised Officer Olds that he (the defendant) was taking "a lot" of medications "for everything." He also indicated he had consumed two beers. An Intoxilyzer breath test registered at .187, and he was arrested for fifth offense DWI. He was also charged with parking in a no parking zone and driving under suspension.
The defendant gave the following account of the events surrounding his arrest for the instant offense. On July 12, 2003, at approximately 6:30 p.m. or 7:10 p.m., he was advised by an employee whom he had recently discharged that the defendant's truck had been left unlocked at the Shop-n-Bag. The defendant walked to the Shop-n-Bag to retrieve his truck. The defendant went into the store, purchased a soda, and left in his truck. He drove behind a police unit and noticed he was being followed by another police unit. The police unit in front of the defendant signaled to turn right and the unit behind the defendant activated its emergency lights. According to the defendant, he attempted to park his vehicle in a legal parking place, but was forced to partially park in the no parking area due to a lack of parking space. He claimed the first thing Officer Olds said to him following the stop was that the police had a tip that he was intoxicated. The defendant denied being asked why he was parking in a no parking area and denied telling Officer Olds that he (the defendant) was going to meet a friend. The defendant claimed he had consumed two or three non-alcoholic beers on the day of his arrest prior to his arrest, and thus responded negatively when Officer Olds initially asked him whether he had been drinking "beer." He also claimed he was taking Plavix, Lipitor, Monopril, Cardarone, Lopressor, aspirin, and nitroglycerine as a result of a heart attack and appendicitis.

MOTION TO SUPPRESS[7]
In assignment of error number one, the defendant contends the trial court erred in denying the motion to suppress the evidence, because there was no corroboration of the anonymous tip, and the stop based on the "no parking" violation was a *622 pretext for the illegal stop; further, the police actions exceeded the bounds necessary for a "no parking" stop and constituted an arrest without probable cause.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. Measured by this standard, LSA-C.Cr.P. art. 215.1, as well as federal and state jurisprudence, recognizes the right of a law enforcement officer to temporarily detain and interrogate a person whom he reasonably suspects is committing, has committed, or is about to commit a crime. Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the specific facts of each case on the basis of whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, 1269.
As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. Although they may serve, and may often appear intended to serve, as a prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. State v. Waters, 00-0356 (La.3/12/01), 780 So.2d 1053, 1056 (per curiam).
The defendant moved to suppress the evidence on the basis of the alleged unconstitutionality of the vehicle stop in this matter. Following a hearing, the motion was denied.
LSA-R.S. 32:143, in pertinent part, provides:
A. No person shall stand, or park a vehicle, except when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or traffic control device, in any of the following places:
* * *
(14) At any place where official signs prohibit such;
* * *
The motion to suppress was properly denied. Officer Olds had probable cause to believe that a traffic violation had occurred in this matter. While Officer Olds initially began following the defendant's vehicle as a result of the anonymous tip, he did not activate his emergency lights and approach the defendant until after personally observing him violate LSA-R.S. 32:143(A)(14).
This assignment of error is without merit.

MOTION TO QUASH
In assignment of error number two, the defendant contends the state failed to meet its burden of proof in that the state's evidence, as documented in the record, failed to establish the validity of all four of the alleged prior convictions. He concedes, however, that the record provides the necessary documentation for predicate number two. In regard to the instant offense, the defendant argues the state failed to meet its burden of proof beyond a reasonable doubt, because it failed to show that the results of the Intoxilyzer test were not affected by the nitroglycerin he *623 allegedly consumed prior to taking the test.
In order for a guilty plea to be used as a basis for actual imprisonment, enhancement of actual imprisonment, or conversion of a subsequent misdemeanor into a felony, the trial judge must inform the defendant that by pleading guilty he waives: (a) his privilege against compulsory self-incrimination; (b) his right to trial and jury trial where applicable; and (c) his right to confront his accuser. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The judge must also ascertain that the accused understands what the plea connotes and its consequences. If the defendant denies the allegations of the bill of information, the state has the initial burden to prove the existence of the prior guilty plea and that the defendant was represented by counsel when it was taken. If the state meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the state. To meet this requirement, the state may rely on a contemporaneous record of the guilty plea proceeding, i.e., either the transcript of the plea or the minute entry. Everything that appears in the entire record concerning the predicate, as well as the trial judge's opportunity to observe the defendant's appearance, demeanor, and responses in court, should be considered in determining whether or not a knowing and intelligent waiver of rights occurred. Boykin only requires that a defendant be informed of the three rights enumerated above. The jurisprudence has been unwilling to extend the scope of Boykin to include advising the defendant of any other rights which he may have. State v. Henry, 00-2250 (La.App. 1st Cir.5/11/01), 788 So.2d 535, 541, writ denied, 01-2299 (La.6/21/02), 818 So.2d 791.
Prior to trial, the defendant moved to quash the original bill of information on the grounds of inadequate predicate offenses. The motion was granted with respect to the first predicate offense listed on the original bill of information, but denied as to the remaining predicate offenses (predicate numbers one through four on the amended bill of information).
At trial, the state and the defendant stipulated that the defendant was the same person who pled guilty to the previous four DWIs and was the person arrested for the instant offense. Further, regarding predicate number one, the state introduced into evidence: a copy of the bill of information charging third offense DWI, an advice of rights form, a copy of the transcript of the guilty plea, and a copy of the minutes of the guilty plea. With respect to predicate number two, as previously noted, the defendant concedes in his brief that the record provides the necessary documentation.
On predicate number three, the state introduced into evidence: a copy of the bill of information charging fourth offense DWI, various defense motions, a waiver of constitutional rights and plea of guilty form (for the charge of third offense DWI), a copy of the transcript of the guilty plea, and various documents concerning the defendant's violation of the conditions of probation.
On predicate number four, the state introduced into evidence: a copy of the bill of information charging fourth offense DWI, various defense motions, a waiver of constitutional rights and plea of guilty form, a copy of the minutes of the guilty pleas for predicate numbers three and four, a copy of the transcript of the guilty plea, and various documents concerning *624 the defendant's violation of the conditions of probation.
Additionally, the defendant testified that, on predicate number one, he was "convicted"[8] of a third offense DWI and was sentenced to two years of imprisonment, suspended, with a condition of probation that he serve six months in jail. With respect to predicate number two, he testified that he pled guilty to third offense DWI and was sentenced to three years of imprisonment, suspended, with a condition of probation that he serve six months in jail. Regarding predicate number three, he testified that he pled guilty to third offense DWI and was sentenced to two years of imprisonment, suspended, with a condition of probation that he serve thirty days in jail. Concerning predicate number four,[9] he testified that he pled guilty to fourth offense DWI and was sentenced to ten years of imprisonment, suspended, with a condition of probation that he serve sixty days in jail. However, with respect to predicate numbers three and four, the court further imposed conditions relating to substance abuse treatment and home incarceration in accordance with the applicable version of LSA-R.S. 14:98.
In the instant case, consideration of everything that appears in the entire record concerning predicate numbers one through four, as well as the opportunity of the respective trial judges to observe the defendant's appearance, demeanor, and responses in court in regard to those predicates, convinces us that the defendant knowingly and intelligently waived his Boykin rights in connection with the predicate offenses. The materials introduced into evidence by the state in support of the use of predicate numbers one through four established the existence of guilty pleas in connection with the predicates and the defendant's representation by counsel for those pleas. Thereafter, the defendant failed to produce any affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of those pleas.
Based upon the Intoxilyzer breath test results, the state availed itself of the statutory presumption that the defendant was under the influence of alcoholic beverages at the time of the instant offense. See LSA-R.S. 32:662(A)(1)(c).[10] The defendant's claim that the test results were the product of nitroglycerin in his body rather than his being under the influence of alcoholic beverages at the time of the offense was an affirmative defense. See State v. Ristom, 607 So.2d 655, 659 (La. App. 3rd Cir.1992), writ denied, 614 So.2d 76 (La.1993). The defendant failed to establish this affirmative defense.
This assignment of error is without merit.

ILLEGAL SENTENCE
In assignment of error number three, the defendant contends the trial court erred in imposing a sentence that exceeded statutory authority. With respect to this contention, the defendant argues that the state failed to present any evidence at sentencing to meet the requisites of LSA-R.S. 14:98(E)(4)(a) or (b), *625 thereby requiring a remand for sentencing under LSA-R.S. 14:98(E)(1)(a).
Prior to the amendment by 2004 La. Acts, No. 762, § 1, LSA-R.S. 14:98, in pertinent part, provided:
E. (1)(a) Except as otherwise provided in Subparagraph (4)(b) of this Subsection, on a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than ten years nor more than thirty years and shall be fined five thousand dollars. Sixty days of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The remainder of the sentence of imprisonment shall be suspended and the offender shall be required to undergo an evaluation to determine the nature and extent of the offender's substance abuse disorder.
* * *
(4)(a) If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to Subsection D of this Section, the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but shall be imprisoned at hard labor for not less than ten nor more than thirty years, and at least three years of the sentence shall be imposed without benefit of suspension of sentence, probation, or parole.
(b) If the offender has previously received the benefit of suspension of sentence, probation, or parole as a fourth offender, no part of the sentence may be imposed with benefit of suspension of sentence, probation, or parole, and no portion of the sentence shall be imposed concurrently with the remaining balance of any sentence to be served for a prior conviction for any offense.
The defendant further contends the state failed to prove he had previously been required to participate in substance abuse treatment and home incarceration pursuant to LSA-R.S. 14:98(D), which sets forth the sentencing parameters for a third offense DWI. As a consequence, the defendant argues the prerequisites for sentencing under LSA-R.S. 14:98(E)(4)(a) were not proven and that sentencing provision was not applicable. On the contrary, the sentencing transcript from the defendant's March 20, 2002 guilty plea to third offense DWI explicitly sets forth all the statutory requirements for sentencing pursuant to Subsection D of LSA-R.S. 14:98, including specifically the requirement to participate in substance abuse treatment and home incarceration. Therefore, the prerequisites for sentencing under LSA-R.S. 14:98(E)(4)(a) were clearly proven.
Moreover, we find no merit to the defendant's argument that LSA-R.S. 14:98(E)(4)(b) is not applicable because the state presented no evidence that he was previously convicted of a fourth offense DWI and that as a result of such a conviction, his sentence was suspended. Once again we refer to the sentencing transcript from the defendant's March 20, 2002 guilty plea to fourth offense DWI and note the judge sentenced the defendant to ten years of imprisonment at hard labor, but suspended the sentence and placed the defendant on supervised probation for a period of five years, subject to various terms and conditions. Therefore, the provisions of LSA-R.S. 14:98(E)(4)(b) were clearly proven to be applicable to the sentencing of the defendant.
The defendant further argues that the bill of information failed to allege conviction *626 of a prior fourth offense DWI, thereby depriving the defendant of notice and an opportunity to refute the grounds for a harsher sentence. This argument assumes that if the defendant had previously received the benefit of suspension of sentence and probation as a fourth offender, this fact was an element of the offense, rather than a sentencing consideration. After careful consideration of the issue, we are convinced that the fact that the defendant had previously received the benefit of suspension of sentence and probation as a fourth offender was a sentencing consideration and not an element of the instant offense.
Any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476, 120 S.Ct. 2348, 2355, 147 L.Ed.2d 435 (2000); Jones v. United States, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 1224 n. 6, 143 L.Ed.2d 311 (1999). Elements of an offense must be charged in the indictment, submitted to a jury, and proven by the government beyond a reasonable doubt. Jones, 526 U.S. at 232, 119 S.Ct. at 1219. The statutory maximum, for Apprendi purposes, is the maximum sentence a judge may impose solely on the basis of the facts reflected in the verdict or admitted by the defendant. Blakely v. Washington, 542 U.S. 296, ___, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004).
The rule of Apprendi made exception for prior convictions because they were the product of proceedings that afforded crucial procedural protections, particularly fair notice, the right to jury trial, and proof beyond a reasonable doubt. State v. Brown, 03-2788 (La.7/6/04), 879 So.2d 1276, 1290, petition for cert. filed 12/2/2004, 73 USLW 3355. The court in Brown held that, because juvenile adjudications were not established through a procedure guaranteeing a jury trial, they were not excepted from the rule of Apprendi. Brown, 879 So.2d at 1290.
In the instant case, the fact that the defendant had previously received the benefit of suspension of sentence and probation as a fourth offender was the product of proceedings that afforded fair notice, the right to jury trial, and proof beyond a reasonable doubt. Accordingly, that fact was excepted from the rule of Apprendi.
The subject matter of LSA-R.S. 14:98(E)(4)(b) further guides our decision. LSA-R.S. 14:98(E)(4)(b) punishes recidivism. Recidivism is one of the most frequently found factors that affect sentencing. Almendarez-Torres v. United States, 523 U.S. 224, 241, 118 S.Ct. 1219, 1229, 140 L.Ed.2d 350 (1998). Additionally, the structure of LSA-R.S. 14:98 indicates that LSA-R.S. 14:98(E)(4)(b) sets forth an additional penalty, not a new crime. LSA-R.S. 14:98(E)(1)(a), LSA-R.S.14:98(E)(4)(a), and LSA-R.S. 14:98(E)(4)(b) must be read together.
This portion of the assignment of error is without merit.

EXCESSIVE SENTENCE
The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Hurst, 99-2868 (La.App. 1st Cir.10/3/00), 797 So.2d 75, 83, writ denied, 00-3053 (La.10/5/01), 798 So.2d 962.
*627 Article I, Section 20, of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. Hurst, 797 So.2d at 83.
The defendant was sentenced to fifteen years at hard labor without benefit of probation, parole, or suspension of sentence. In assignment of error number three, the defendant also contends this sentence was unconstitutionally excessive.
At sentencing, defense counsel advised the court that although the defendant had "some" previous DWIs, he had never hurt anyone and he had never caused property damage in connection with the DWIs. The defendant indicated he had been battling alcoholism "for a while," the Intoxilyzer breath test had been affected by the heart medicine and nitroglycerine spray he had used, he was forty-four years old, and his children were nine, ten, and twenty-one years old. He did not dispute the fact that, in addition to the instant offense, he had seven DWIs.
In imposing sentence, the court noted, "It is obvious Mr. Hardeman, you know, if somebody hits their head up against the wall, the smart guy says, hey, I'm not going to do that again. But it's just been time after time, after time for Mr. Hardeman." The court also noted the defendant had originally been offered a ten year prison term pursuant to a plea agreement, but that offer had been made before the court realized the extent of the defendant's past criminal activity.
A thorough review of the record reveals the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentence in this case. See LSA-C.Cr.P. art. 894.1(A)(1) and (B)(12).
Further, the sentence imposed was not grossly disproportionate to the severity of the offense and, thus, was not unconstitutionally excessive.
This portion of the assignment of error is also without merit.

DECREE
Finding no merit in the assertions raised in this appeal, we affirm the conviction and sentence imposed against defendant, John Lee Hardeman.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Honorable Frank Foll, retired from the Louisiana Court of Appeal, First Circuit, is serving as judge ad hoc by special appointment of the Louisiana Supreme Court.
[2] The bill of information was amended following the trial court's quashing of the defendant's alleged December 10, 1996 guilty plea to driving while intoxicated on September 13, 1996. See Docket No. 282,705 of the Thirty-Second Judicial District Court (32nd JDC).
[3] See Docket No. 330,773 of the 32nd JDC.
[4] See Docket No. 315,188 of the Twenty-Second Judicial District Court.
[5] See Docket No. 385,568 of the 32nd JDC.
[6] See Docket No. 385,588 of the 32nd JDC.
[7] In determining whether the ruling on the defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may also consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979).
[8] The defendant indicated he had pled guilty in connection with his prior DWI offenses.
[9] The state asked the defendant if he had pled guilty on "March 20, 2002" to DWI, fourth offense. The bill of information alleged the date of the guilty plea on predicate number four was "March 20, 2003."
[10] The amendment to this statutory provision by 2001 La. Acts, No. 781, § 4, did not become effective until September 30, 2003, and is not applicable under the facts of this case.